32 A.3d 587

**HOFFMAN MINING COMPANY, INC., Appellant**

v.

**ZONING HEARING BOARD OF ADAMS TOWNSHIP, CAMBRIA COUNTY, and Township of Adams, Appellees.**

Supreme Court of Pennsylvania.

Argued April 13, 2010.

Decided Nov. 23, 2011.

600

602

Michael W. Sahlaney, Sahlaney & Dudeck Law Office, Johnstown, for Hoffman Mining Company, Inc.

Kevin J. Garber, Babst, Calland, Clements & Zomnir, P.C., Pittsburgh, for Appellant Amicus Curiae, the PA Coal Assoc. & the PA Aggregates & Concrete Assoc.

William Gleason Barbin, Gleason, McQuillan, Barbin & Markovitz, L.L.P., Johnstown, for Township of Adams.

Gary Lee Costlow, Ebensburg, for Zoning Hearing Board of Adams Township.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

**OPINION**

Justice McCAFFERY.

In this appeal, the question presented is whether the Sur-

face Mining Conservation and Reclamation Act[1] (hereinafter the "Surface Mining Act") preempts a provision in a local zoning ordinance that establishes a setback for mining activities from all residential structures. We hold that the local zoning provision is not preempted, and so affirm the order of the Commonwealth Court.

The zoning ordinance at issue, which was enacted by Adams Township in Cambria County after the effective date of the Surface Mining Act, permits mining activities in a district known as the Conservancy (S) District only by special exception. Adams Township Zoning Ordinance § 1413. In addition, the zoning ordinance requires "[a]ll mining, excavating, and blasting activities" in the Conservancy (S) District to maintain a setback of at least 1,000 feet from all residential structures. *Id.* § 1413.5(a).[2]

Hoffman Mining Company, Inc. (hereinafter "Hoffman Mining") sought to engage in surface coal mining on a 182.1–acre tract of land within the Adams Township Conservancy (S) District adjacent to the Village of Mine 42.[3] In pursuit of this effort, on or about November 20, 2006, Hoffman Mining filed an application with the Adams Township Zoning Hearing Board (hereinafter the "Zoning Board") requesting a special exception to conduct surface mining. In addition, based on the determination that 88% of the coal contained in the tract was within 1,000 feet of Village residences,[4] Hoffman Mining

1. Act of November 30, 1971, P.L. 554, *as amended,* 52 P.S. §§ 1396.1–1396.19a.

2. The relevant provisions of the Zoning Ordinance are as follows:
 Mining activities are permitted only by special exception in the Conservancy (S) District and subject to the following regulations:

 * * *

 5. Setback Requirements—All mining, excavating, and blasting activities shall maintain, at a minimum:
 a. A 1,000 foot horizontal distance from all residential structures;
 Adams Township Zoning Ordinance § 1413.5(a).

3. Hoffman Mining was the lessee; Berwind Corporation owned the tract of land.

4. Hoffman Mining presented testimony that the tract contained a total of approximately 250,000 tons of coal, worth approximately $9,000,000; however, if the Township's 1,000–foot setback provision were to be

requested a variance from the zoning ordinance's 1,000–foot setback provision, subsection 1413.5(a). In the alternative, Hoffman Mining asserted that the setback provision of subsection 1413.5(a) was preempted by the Surface Mining Act. Hoffman Mining argued that there was a conflict between the zoning ordinance's setback provision and the Surface Mining Act's setback clause, under which no "surface mining operations" are permitted within 300 feet of any "occupied dwelling." [5] 52 P.S. §§ 1396.4b(c) and 1396.4e(h)(5). Hoffman Mining also cited the Surface Mining Act's preemption clause, which is as follows:

**Local ordinances**

Except with respect to ordinances adopted pursuant to the ... "Pennsylvania Municipalities Planning Code," [53 P.S. § 10101 et seq.,] all local ordinances and enactments purporting to regulate surface mining are hereby superseded.

applied, only approximately 30,000 to 33,000 tons of coal, worth approximately $900,000, would be recoverable. Notes of Testimony, 12/15/06, at 45–46, 51, 100, 102; *see also* Hoffman's Brief at 12–13; *Hoffman Mining Company, Inc. v. Zoning Hearing Board of Adams Township*, 958 A.2d 602, 606–07 (Pa.Cmwlth.2008).

**5.** The relevant setback provisions of the Surface Mining Act are as follows:

... no operator shall conduct surface mining operations (other than borrow pits for highway construction purposes) within one hundred feet of the outside line of the right-of-way of any public highway or within three hundred feet of any occupied dwelling, unless released by the owner thereof, nor within three hundred feet of any public building....

52 P.S. § 1396.4b(c).

... no surface mining operations except those which existed on August 3, 1997 shall be permitted:

\* \* \*

(5) within three hundred feet from any occupied dwelling, unless waived by the owner thereof....

52 P.S. § 1396.4e(h)(5).

The statutory definition of "operation" is as follows:

"Operation" shall mean the pit located upon a single tract of land or a continuous pit embracing or extending upon two or more contiguous tracts of land.

52 P.S. § 1396.3 ("Definitions").

The Commonwealth by this enactment hereby preempts the regulation of surface mining as herein defined.

52 P.S. § 1396.17a (footnote incorporated into text).

The Zoning Board held public hearings on December 15, 2006, and January 11, 2007, at which time extensive testimony was received from Village residents who lived adjacent or in close proximity to the proposed mining site. The Zoning Board found credible the residents' testimony regarding the following hazards of the proposed mining: debris and dust descending into the Village, due to the steep elevation of the proposed mining site; danger to children from open holding ponds 12–14 feet deep, adjacent to areas where they play; the residents' health-related issues, including asthma and other respiratory problems.

On February 1, 2007, the Zoning Board granted Hoffman Mining's request for a special exception to permit mining on the tract, subject to the condition that any holding pond must be surrounded by a five-foot fence. However, based on the Zoning Board's finding of "substantial health, safety and welfare issues," the Zoning Board denied Hoffman Mining's request for a variance from the zoning ordinance's 1,000 foot residential setback provision.[6] Zoning Board Findings of Fact and Conclusions of Law, dated 2/1/07, at 3. In addition, relying on a distinction between regulation of mining activities and traditional zoning prerogatives, the Zoning Board concluded that the zoning ordinance's 1,000 foot residential setback provision was not preempted by the Surface Mining Act. *Id.*

Hoffman Mining appealed the Zoning Board's decision to the Court of Common Pleas of Cambria County. The trial court affirmed, concluding, *inter alia*, that the zoning ordinance's 1000–foot residential setback provision was a traditional land use regulation, not a surface mining regulation, and thus, pursuant to the plain language of the Surface Mining

6. Hoffman Mining had also sought a variance to permit mining within 1,500 feet of residential areas after dark. The Zoning Board granted Hoffman this variance, and the matter is not at issue in this appeal.

Act's preemption clause, was not preempted. Trial Court Opinion and Order, dated 10/29/07, at 5–7.[7]

Hoffman Mining then appealed to the Commonwealth Court, which also affirmed. The Commonwealth Court held that the "challenged [residential setback] provision of the Zoning Ordinance is a quintessential land use control logically connected to land use planning and is, therefore, not preempted by [the Surface Mining Act's preemption clause]." *Hoffman Mining Company, Inc. v. Zoning Hearing Board of Adams Township*, 958 A.2d 602, 611 (Pa.Cmwlth.2008).

Hoffman Mining sought review in this Court, which we granted on the following issue, as formulated by Hoffman Mining:

> Did the Commonwealth Court of Pennsylvania commit an error of law by affirming the decision of the Court of Common Pleas of Cambria County, which affirmed the Adams Township Zoning Hearing Board's ruling that the Surface Mining Conservation and Reclamation Act [ ], 52 P.S. § 1396.1 to 1396.31, does not preempt Section 1413, Paragraph 5, of the Adams Township Zoning Ordinance barring mining activities within 1,000 feet of a residential structure?

*Hoffman Mining Co., Inc. v. Zoning Hearing Board of Adams Township*, 603 Pa. 68, 981 A.2d 1284 (2009).

 Thus, the issue before us is whether the zoning ordinance's provision requiring all mining, excavating, and blasting activities to maintain a 1,000 foot setback from residential structures is preempted by the Surface Mining Act, which bars surface mining operations within 300 feet of an occupied dwelling. Resolving this question involves statutory interpretation, a question of law, for which our standard of review is *de novo*, and our scope is plenary. *Holt's Cigar Company*,

7. The trial court also concluded that the Zoning Board did not abuse its discretion in denying Hoffman Mining's application for a variance from the residential setback requirements of the zoning ordinance. Trial Court Opinion and Order, dated 10/29/07, at 17. The Commonwealth Court affirmed. *Hoffman Mining Company, Inc. v. Zoning Hearing Board of Adams Township*, 958 A.2d 602, 612–13 (Pa.Cmwlth.2008). This aspect of the Commonwealth Court's decision is not before us.

*Inc. v. City of Philadelphia,* 608 Pa. 146, 10 A.3d 902, 906 (2011); *Nutter v. Dougherty,* 595 Pa. 340, 938 A.2d 401, 412 n. 20 (2007). We have recently summarized the relevant principles of statutory interpretation as follows:

> The object of interpretation and construction of all statutes is to ascertain and effectuate the intent of the General Assembly. *See* 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from all ambiguity, their plain language is generally the best indication of legislative intent. A reviewing court should resort to other considerations to determine legislative intent only when the words of the statute are not explicit. 1 Pa.C.S. § 1921(b).
>
> \* \* \*
>
> ▮ Moreover, it is axiomatic that in determining legislative intent, all sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute.

*E.D.B. v. Clair,* 605 Pa. 73, 987 A.2d 681, 684 (2009) (internal citations omitted).

▮ We begin by reiterating the statutory basis for a municipality's exercise of zoning power. As creatures of the state, municipalities have no inherent powers, but rather "possess only such powers of government as are expressly granted to them and as are necessary to carry the same into effect." *Huntley & Huntley, Inc. v. Borough Council of Oakmont,* 600 Pa. 207, 964 A.2d 855, 862 (2009) (quoting *City of Philadelphia v. Schweiker,* 579 Pa. 591, 858 A.2d 75, 84 (2004)). Pursuant to the Pennsylvania Municipalities Planning Code [hereinafter the "MPC"], the governing body of a municipality "may enact, amend and repeal zoning ordinances to implement comprehensive plans and to accomplish any of the purposes of [the MPC]." 53 P.S. § 10601. Purposes of the MPC include the following: "to protect and promote safety, health and morals; to accomplish coordinated development; to provide for the general welfare by guiding and protecting amenity, convenience, future governmental, economic, practical, and social and cultural facilities, development and

growth, ...; to guide uses of land and structures, type and location of streets, public ground and other facilities; ... and to permit municipalities to minimize such problems as may presently exist or which may be foreseen." 53 P.S. § 10105. Setback requirements are a well-established aspect of zoning ordinances. *See, e.g., Miller & Son Paving, Inc. v. Wrightstown Township,* 499 Pa. 80, 451 A.2d 1002, 1005–06 (1982); *Scholl v. Borough of Yeadon,* 148 Pa.Super. 601, 26 A.2d 135, 136 (1942) ("Set-back ordinances generally have received judicial sanction as lawful exercise of the police power, where the restriction has a substantial bearing on the health, safety, morals or general welfare of the public.").

We turn next to the law of preemption, recognizing that, even in areas over which municipalities have been granted power to act, the state may bar local governing bodies from legislating in a particular field. *Huntley,* 964 A.2d at 862 (citing *United Tavern Owners of Philadelphia v. School District of Philadelphia,* 441 Pa. 274, 272 A.2d 868, 870 (1971)). However, the mere fact that the General Assembly has enacted legislation in a field does not lead to the presumption that the state has precluded all local enactments in that field; rather, the General Assembly must clearly evidence its intent to preempt. *Council of Middletown Township v. Benham,* 514 Pa. 176, 523 A.2d 311, 313 (1987); *see Mars Emergency Medical Services, Inc. v. Township of Adams,* 559 Pa. 309, 740 A.2d 193, 196 (1999) ("[A]bsent a clear statement of legislative intent to preempt, state legislation will not generally preempt local legislation on the same issue."). Such clarity is mandated because of the severity of the consequences of a determination of preemption: "If the General Assembly has preempted a field, the state has retained all regulatory and legislative power for itself and no local legislation in that area is permitted." *Hydropress Environmental Services, Inc. v. Township of Upper Mount Bethel,* 575 Pa. 479, 836 A.2d 912, 918 (2003) (Opinion Announcing the Judgment of the Court) (quoting *Benham, supra* at 313). This Court has determined that the General Assembly has evidenced a clear intent to totally preempt local regulation in only three areas: alcoholic bever-

ages, anthracite strip mining, and banking. *See Hydropress Environmental Services, supra* at 918; *Mars Emergency, supra* at 195.

■ There are three generally recognized types of preemption: (1) express or explicit preemption, where the statute includes a preemption clause, the language of which specifically bars local authorities from acting on a particular subject matter; (2) conflict preemption, where the local enactment irreconcilably conflicts with or stands as an obstacle to the execution of the full purposes of the statute; and (3) field preemption, where analysis of the entire statute reveals the General Assembly's implicit intent to occupy the field completely and to permit no local enactments. *Holt's Cigar, supra* at 907; *Huntley,* 964 A.2d at 862–63 & n. 6; *Cellucci v. General Motors Corporation,* 550 Pa. 407, 706 A.2d 806, 809 (1998). Both field and conflict preemption require an analysis of whether preemption is implied in or implicit from the text of the whole statute, which may or may not include an express preemption clause. *Cellucci, supra* at 809.

■ Conflict preemption is a formalization of the self-evident principle that "a municipal ordinance cannot be sustained to the extent that it is contradictory to, or inconsistent with, a state statute." *Mars Emergency, supra* at 195 (quoting *Western Pennsylvania Restaurant Association v. City of Pittsburgh,* 366 Pa. 374, 77 A.2d 616, 620 (1951)). Conflict preemption is applicable when the conflict between a local ordinance and a state statute is irreconcilable, *i.e.,* when simultaneous compliance with both the local ordinance and the state statute is impossible. *See Council 13, Am. Fed'n of State, County & Mun. Employees v. Rendell,* 604 Pa. 352, 986 A.2d 63, 81–82 (2009) (holding that an irreconcilable conflict existed between a federal law and a section of the Pennsylvania Constitution because the former required the timely payment of wages to state employees, but the latter barred the expenditure of monies from the state treasury during a budget impasse when no appropriations bill had been passed); *City Council of the City of Bethlehem v. Marcincin,* 512 Pa. 1, 515

A.2d 1320, 1323, 1326 (1986) (concluding that an ordinance limiting a mayor to two consecutive terms was not irreconcilable with a statute providing that a mayor shall be eligible for reelection); *Fross v. County of Allegheny*, 20 A.3d 1193, 1203 n. 12 (Pa.2011). In addition, under the doctrine of conflict preemption, a local ordinance will be invalidated if it stands "as an obstacle to the execution of the full purposes and objectives" of a statutory enactment of the General Assembly. *Id.* at 1203–1207 (concluding that a local ordinance severely restricting where convicted sex offenders could reside was an impediment to the objectives of the General Assembly as expressed in the Sentencing and Parole Codes, which set forth a policy of rehabilitation, reintegration, and diversion from prison of appropriate offenders, based on individually tailored assessments); *Holt's Cigar, supra* at 913 (concluding that a Philadelphia ordinance that banned the sale of certain items having both a legitimate use and a drug-related use interfered with an implied objective of the Controlled Substance, Drug, Device and Cosmetic Act to protect merchants who sell dual-use items for legitimate purposes).

Finally, with regard to conflict preemption, we reiterate this Court's prior statements as to the proper standard for invalidation of local ordinances, and also as to the potential coexistence of local enactments that supplement the statutory scheme or goals. "Where an ordinance conflicts with a statute, the will of the municipality as expressed through an ordinance will be respected unless the conflict between the statute and the ordinance is irreconcilable." *Marcincin*, 515 A.2d at 1326. We will refrain from holding that a local ordinance is invalid based on conflict preemption "unless there is such actual, material conflict between the state and local powers that only by striking down the local power can the power of the wider constituency be protected." *United Tavern Owners of Philadelphia v. School District of Philadelphia*, 441 Pa. 274, 272 A.2d 868, 871 (1971). It is a long-established general rule that "in determining whether a conflict exists between a general and local law, [ ] where the

legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipal corporation with subordinate power to act in the matter may make such additional regulations in aid and furtherance of the purpose of the general law as may seem appropriate to the necessities of the particular locality and which are not in themselves unreasonable." *Mars Emergency*, 740 A.2d at 195 (quoting *Western Pennsylvania Restaurant Association*, 77 A.2d at 620). For example, "municipalities in the exercise of the police power may regulate certain occupations by imposing restrictions which are in addition to, and not in conflict with, statutory regulations." *Western Pennsylvania Restaurant Association*, *supra* at 620. We have also observed that this Court has "traditionally given local zoning power great play[, and has] been reluctant to strike down a local ordinance in cases where a state statute does not directly and inherently conflict with the zoning power." *Benham*, 523 A.2d at 315.

These principles have been applied in several cases with relevance to the instant appeal. Nearly three decades ago, this Court interpreted the express preemption clause of the Surface Mining Act in the context of a fact pattern similar but not identical to the instant case. *See Miller & Son Paving, Inc. v. Wrightstown Township*, 499 Pa. 80, 451 A.2d 1002 (1982). In *Miller*, this Court considered whether a local zoning ordinance that imposed setback requirements on quarries was superseded or preempted by the Surface Mining Act. The date of the zoning ordinance challenged in *Miller* was important: it had been enacted in 1971, **prior** to the effective date of the Surface Mining Act, which was January 1, 1972. At the time of the *Miller* dispute, the preemption clause of the Surface Mining Act read as follows:

Except with respect to Zoning Ordinances, all local ordinances and enactments purporting to regulate surface mining are hereby superseded. The Commonwealth by this enactment hereby preempts the regulation of surface mining operations as herein defined.

*Miller, supra* at 1005 (quoting 52 P.S. § 1396.17 (repealed)).[8]

In *Miller*, we considered the two sentences of this preemption clause in turn. First, we determined that the General Assembly's use of the word "superseded" in the first sentence "reflect[ed] a legislative intent to displace all local regulations related to surface mining which were in existence as of the effective date of the Act [ ], except for zoning ordinances." *Id.* We concluded that the challenged ordinance was preserved from supersession by the express language of this sentence, because the challenged ordinance was a zoning ordinance and thus was expressly excepted. Next, we considered the second sentence of Section 1396.17, and concluded that this sentence revealed the General Assembly's intent to preempt *future* local enactments purporting to regulate surface mining operations. *Id.* Thus, this sentence was not relevant to the challenged ordinance because it had been enacted prior to the Surface Mining Act. We further concluded in *Miller* that "it is clear that the Legislature could not have intended in 1971 to displace all existing and future local regulation of surface mining." *Id.* Accordingly, we held in *Miller* that zoning ordinances enacted prior to the effective date of the Surface Mining Act were neither superseded nor preempted by this Act. *Id.*

It is important to emphasize that in *Miller*, we were not presented with, we did not consider, and we did not rule on the validity of zoning ordinances that were enacted *after* the effective date of the Surface Mining Act.[9]

More recently, in *Huntley*, 964 A.2d at 855, this Court

8. This preemption clause is very similar to the current one. *See* text *supra.*

9. Hoffman Mining asserts that "the clear language in *Miller* holds that zoning ordinances or amendments thereto adopted after 1971 [*i.e.,* after the effective date of the Surface Mining Act,] and which purport to regulate setbacks, are preempted." Hoffman Mining's Brief at 15. Hoffman Mining's assertion is incorrect, as it constitutes an unreasonable extension of this Court's holding in *Miller*. As discussed in the text, the ordinance challenged in *Miller* **pre-dated** the Surface Mining Act, and we did not consider, nor did our holding encompass, ordinances enacted **after** the effective date of the Surface Mining Act.

interpreted the preemption clause of the Oil and Gas Act,[10] and held that it did not preempt a local zoning ordinance permitting drilling only as a conditional use in an R–1, single-family, residential district. The plaintiffs in *Huntley* sought to extract natural gas from two parcels of land, constituting a total of ten acres in a residential district, but the borough council denied their conditional use application. *Id.* at 857–58. The plaintiffs appealed, arguing, *inter alia,* that the Oil and Gas Act preempted the zoning ordinance. The trial court affirmed the decision of the borough council, but the Commonwealth Court reversed, and we granted the borough's petition for allowance of appeal.

The preemption clause of the Oil and Gas Act reads as follows:

> Except with respect to ordinances adopted pursuant to the ... Pennsylvania Municipalities Planning Code, and ... the Flood Plain Management Act, all local ordinances and enactments purporting to regulate oil and gas well operations regulated by this act are hereby superseded. *No ordinances or enactments adopted pursuant to the aforementioned acts shall contain provisions which impose conditions, requirements or limitations on the **same features** of oil and gas well operations regulated by this act or that accomplish the **same purposes** as set forth in this act.* The Commonwealth, by this enactment, hereby preempts and supersedes the regulation of oil and gas wells as herein defined.

58 P.S. § 601.602 (emphases added) (The underlined sentence was added by 1992 amendment.).

The first and third sentences of Section 602 are very similar to the preemption clause of the Surface Mining Act. However, as we have previously recognized, the permissibility of MPC-enabled local regulation of oil and gas wells was "substantially curtailed" by the 1992 addition of the second sentence to Section 602. *Huntley, supra* at 863–64 n. 8. Our analysis in *Huntley* focused on this second sentence. Even given this

10. Act of December 19, 1984, P.L. 1140, *as amended,* 58 P.S. §§ 601.101–601.605.

additional, specifically restrictive sentence, we held that the challenged zoning ordinance was not preempted by Section 602 because the preemptive language of that Section pertained specifically to *features* of well operations and the Oil and Gas Act's stated *purpose,* neither of which the challenged ordinance addressed. *Id.* at 863–66. First, we concluded that the *placement* of a natural gas well at a particular location was not a *feature* of its operation regulated by the Oil and Gas Act. *Huntley, supra* at 863–64. "Section 602's reference to 'features of oil and gas well operations regulated by this act' pertains to technical aspects of well functioning and matters ancillary thereto (such as registration, bonding, and well site restoration), rather than the well's location." *Id.* at 864. Second, we concluded that, although some overlap was apparent, the *purposes* of the zoning ordinance were different from those of the Oil and Gas Act. We noted in particular the objectives of the challenged zoning ordinance relating to preservation of the character of residential neighborhoods and encouragement of "beneficial and compatible land uses." *Id.* at 865. We summarized our interpretation of the relationship between the Oil and Gas Act and zoning ordinances as follows:

> This limitation on preemption [in Section 602 of the Oil and Gas Act] regarding MPC-enabled legislation appears to reflect the General Assembly's recognition ... that, while effective oil and gas regulation in service of [the Oil and Gas] Act's goals may require the knowledge and expertise of the appropriate state agency, the MPC's authorization of local zoning laws is provided in recognition of the unique expertise of municipal governing bodies to designate where different uses should be permitted in a manner that accounts for the community's development objectives, its character, and the "suitabilities and special nature of particular parts of the [municipality]."

*Id.* at 866 (quoting 53 P.S. § 10603(a)).

Thus, the Oil and Gas Act's "preemptive scope is not total in the sense that it does not prohibit municipalities from enacting traditional zoning regulations that identify which uses are permitted in different areas of the locality, even if such

regulations preclude oil and gas drilling in certain zones." *Range Resources–Appalachia, LLC v. Salem Township*, 600 Pa. 231, 964 A.2d 869, 872 (2009) (discussing *Huntley's* holding in a companion case).

Two cases from the Commonwealth Court, both of which consider preemption under the Noncoal Surface Mining Conservation and Reclamation Act (hereinafter the "Noncoal Mining Act"),[11] rely on the principles of *Miller* and are consistent with *Huntley. See Tinicum Township v. Delaware Valley Concrete, Inc.*, 812 A.2d 758, 759–60 (Pa.Cmwlth.2002); *Warner Company v. Zoning Hearing Board of Tredyffrin Township*, 148 Pa.Cmwlth. 609, 612 A.2d 578, 580 (1992). The text of the preemption clause of the Noncoal Mining Act is identical to that of the Surface Mining Act, and reads as follows:

**Local ordinances**

Except with respect to ordinances adopted pursuant to the ... Pennsylvania Municipalities Planning Code, [53 P.S. § 10101 et seq.,] all local ordinances and enactments purporting to regulate surface mining are hereby superseded. The Commonwealth, by this enactment, hereby preempts the regulation of surface mining as herein defined.

52 P.S. § 3316 (footnote incorporated into text); *compare with* 52 P.S. § 1396.17a.[12]

In *Warner Company*, a quarry challenged the validity of a zoning ordinance that established quarrying districts in the township and included setbacks for a quarry, specifically providing that no mining or excavation shall be permitted within 300 feet of, *inter alia*, any right-of-way of any public street, cemetery, stream or other natural body of water. The quarry argued that the setbacks were preempted by the Noncoal Mining Act, which provided that no surface mining operations were to be conducted within 100 feet of any public highway,

11. Act of December 19, 1984, P.L. 1093, No. 219, *as amended*, 52 P.S. §§ 3301–26.

12. The only difference between the preemption clauses of the Noncoal Mining Act and the Surface Mining Act is a pair of commas surrounding the prepositional phrase by this enactment in the former. This additional punctuation does not alter the meaning.

cemetery, or stream. *Id.* at 585; 52 P.S. § 3311(c)(1). In resolving the setback dispute in favor of the township, the Commonwealth Court distinguished between the regulation of surface mining operations, which was preempted by the Noncoal Mining Act, versus the regulation of land use, which was a legitimate exercise of local powers under the MPC. *Id.* at 581–82. Concluding that the setback provisions were "traditional land use regulations" enacted as part of a zoning ordinance in accordance with the MPC, the Commonwealth Court concluded that the setback provisions were not preempted by the Noncoal Mining Act. *Id.* at 582, 585. However, the Commonwealth Court also concluded that certain other provisions of the ordinance, which set forth requirements for buffers and berms, overburden storage, reclamation, and drainage structures, were preempted by the Noncoal Mining Act because they were regulations of surface mining operations.

In *Delaware Valley Concrete*, the ordinance at issue was a "Blasting Ordinance," which regulated the detonation of all explosives, prohibited blasting without obtaining a permit, and established setbacks of 2,000 feet from all national historic landmarks and 300 feet from any inhabited building. When Tinicum Township sought to enjoin Delaware Valley Concrete from blasting in a quarry, the trial court granted a preliminary injunction. Delaware Valley Concrete appealed to the Commonwealth Court, arguing, *inter alia,* that the Blasting Ordinance was preempted by the Noncoal Mining Act. The Commonwealth Court emphasized that the Blasting Ordinance was a "stand-alone ordinance that is not part of a zoning code or subdivision regulation, and all of its provisions go to when, where and how blasting can occur rather than what, where and how a particular land use will be permitted." *Id.* at 764. With regard specifically to the ordinance's setback provisions, the Commonwealth Court emphasized that only blasting, not mining altogether, was prohibited, and thus the ordinance was attempting to regulate the *manner* in which the extraction of minerals could take place, not the location. Accordingly, concluding that blasting is a surface mining activity, the

Commonwealth Court held that the Blasting Ordinance was preempted by the Noncoal Mining Act.[13]

Although the four cases discussed above involve distinct factual circumstances and are controlled by three different statutes, they each make a distinction between the regulation of the technical activities of mining/drilling and the traditional regulation of land use through zoning ordinances. This distinction is highly relevant to the instant appeal, to which we now turn.[14]

Hoffman Mining asserts that "**any** zoning-based preclusion of mining" undertaken subject to the regulations of the Surface Mining Act is "specifically preempted" by operation of the Section 1396.17a preemption clause. Hoffman Mining's Brief at 19 (emphasis added). We cannot agree.

The precise wording of the Surface Mining Act's preemption clause is as follows:

13. Although the Commonwealth Court held that the Blasting Ordinance was preempted by the Noncoal Mining Act, the Court nonetheless affirmed the trial court's grant of a preliminary injunction in favor of the Township based on common law nuisance doctrine. *Tinicum Township*, 812 A.2d at 765.

14. Hoffman Mining relies on another Commonwealth Court decision, to wit, *Pennsylvania Coal Company, Inc. v. Township of Conemaugh*, 149 Pa.Cmwlth. 22, 612 A.2d 1090 (1992). Hoffman Mining asserts that the Commonwealth Court in *Pennsylvania Coal* invalidated a local ordinance requiring, *inter alia*, a 1,000–foot setback from an occupied dwelling for all surface mining activities. Hoffman Mining's Brief at 16–17. The setback provision was one small part of a comprehensive ordinance that "clearly regulate[d] the operation of surface coal mining in the Township in addition to location and physical configuration." *Pennsylvania Coal, supra* at 1092–93. The Commonwealth Court listed numerous ordinance provisions by which the Township was seeking to regulate the operation of surface mining activities, including submission of information to the Township, construction of structures within specified distances of wetlands, timber harvesting, extraction of coal, excavations and fills, storm water management, and blasting. *Id.* at 1093. The Commonwealth Court then concluded that "[t]hese provisions are more extensive than the traditional land use controls accomplished by zoning," and accordingly directed the trial court to invalidate the entire comprehensive amendment. *Id.* at 1091, 1093–94. The Commonwealth Court did not specifically discuss or even mention the ordinance's setback provisions. Hence, *Pennsylvania Coal* lends little, if any, support to Hoffman Mining's position.

Except with respect to ordinances adopted pursuant to the act of July 31, 1968 (P.L. 805, No. 247), known as the "Pennsylvania Municipalities Planning Code," [53 P.S. § 10101 et seq.,] all local ordinances and enactments purporting to regulate surface mining are hereby superseded. The Commonwealth by this enactment hereby preempts the regulation of surface mining as herein defined.

52 P.S. § 1396.17a (footnote omitted).

As discussed above, we have previously held, based on the General Assembly's choice of the word "superseded," that the first sentence of this preemption clause applies to local enactments already in existence at the time the Surface Mining Act took effect. *See* discussion of *Miller* in text *supra*. There is no dispute that the Zoning Ordinance challenged here was enacted **after** the effective date of the Surface Mining Act; hence, based on *Miller*, the first sentence of the preemption clause does not apply to the instant circumstances.

However, pursuant to the second sentence of the Surface Mining Act's preemption clause, the Commonwealth "**preempts the regulation of surface mining as herein defined.**" In *Miller*, we concluded that the General Assembly's use of the term "preempts" in this sentence contemplates the future, and, accordingly, bars local authorities from enacting regulations of "surface mining" after the effective date of the Surface Mining Act. *Miller, supra* at 1005. Although there is no definition of "surface mining" in the Surface Mining Act, there is a definition of "surface mining activities," as follows:

"Surface mining activities" shall mean the extraction of coal from the earth or from waste or stock piles or from pits or banks by removing the strata or material which overlies or is above or between them or otherwise exposing and retrieving them from the surface, including, but not limited to, strip, auger mining, dredging, quarrying and leaching, and all surface activity connected with surface or underground mining, including, but not limited to, exploration, site preparation, entry, tunnel, drift, slope, shaft and borehole drilling and construction and activities related thereto, but not including those portions of mining operations carried out

beneath the surface by means of shafts, tunnels or other underground mine openings. . . .

52 P.S. § 1396.3 ("Definitions").[15]

We conclude that the intent of the General Assembly in Section 1396.17a was to preempt local regulation of surface mining as that term is defined under "surface mining activities" in Section 1396.3. This conclusion is strongly supported by a comparison of the preemption clauses and definitions in the Surface Mining Act and the Noncoal Mining Act. As discussed *supra,* the Surface Mining Act and the Noncoal Mining Act contain preemption clauses with identical text. *Compare* 52 P.S. §§ 1396.17a and 3316, *supra.* However, in contrast to the Surface Mining Act, the Noncoal Mining Act provides a definition of "surface mining," but does not provide a definition of "surface mining activities." Importantly, the definition of "surface mining" in the Noncoal Mining Act is strikingly similar to the definition of "surface mining activities" in the Surface Mining Act. *Compare* 52 P.S. §§ 3303 and 1396.3. The one obvious difference is that the former definition refers to the extraction of minerals, while the latter definition refers to the extraction of coal, but the activities, processes, procedures, and stages included in the two definitions are almost identical. Hence, we conclude that the Surface Mining Act's preemption of local regulation of "surface mining as herein defined" refers to the regulation of all the activities incorporated into that Act's definition of "surface mining activities."

Notably missing from the Surface Mining Act's definition of "surface mining activities" is any mention whatsoever of either the location of surface mining or traditional land use regulation. Not only the Commonwealth Court, but also this Court, has recognized that questions regarding mining or drilling *operations* are distinct from questions regarding the proper *location* for such operations. *See Huntley,* 964 A.2d at 863–66; *Delaware Valley Concrete,* 812 A.2d at 763–64; *Warner*

15. The definition concludes with a list of what "surface mining activities" does not include. None of these exclusions is relevant to the instant appeal.

*Company,* 612 A.2d at 581–82. As discussed above, in *Huntley, supra* at 857, 866, this Court held that the Oil and Gas Act did not preempt a local zoning ordinance that permitted drilling for natural gas in a residential district *only* as a conditional use. We recognized a distinction between regulation of the features of oil and gas well operations and regulation through zoning of the location of the well. *Id.* at 863. While the preemption clauses of the Oil and Gas Act and the Surface Mining Act are very similar, the former contains an added sentence that substantially curtails MPC-enabled ordinances. *Id.* at 864–65 n. 8. Nonetheless, even given the stricter preemption clause, we held in *Huntley* that the Oil and Gas Act does not preempt an ordinance restricting oil and gas wells in a residential district.

 We reach a similar conclusion here. The Surface Mining Act's preemption clause expressly preempts the regulation of surface mining; however, the clause does not preempt local regulation of land use via zoning ordinances, which may affect where surface mining is located or sited. We will not infer that an express preemption clause encompasses the traditionally local concerns of land use and zoning when the General Assembly has not clearly incorporated those concerns into the clause. The residential setback provision challenged here does not constitute regulation of surface mining, as that term is defined in the Surface Mining Act. Rather, the setback provision falls clearly within the purview of traditional zoning regulations and merely regulates where surface mining can be sited relative to residential structures. Therefore, we hold that the residential setback provision in the Adams Township Zoning Ordinance is not expressly preempted by the preemption clause of the Surface Mining Act.[16]

16. Hoffman Mining also argues that the zoning ordinance is expressly preempted by subsection 1396.4b(a) of the Surface Mining Act, which provides in relevant part as follows:

Except as otherwise provided hereunder ... **all surface mining operations coming within the provisions of this act shall be under the exclusive jurisdiction of the [Department of Environmental Protection]** and shall be conducted in compliance with such reasonable

Our analysis is not complete, however, because Hoffman Mining also contends that the General Assembly **implicitly** intended to preempt local enactments such as the zoning ordinance's setback provision. Hoffman Mining argues that the General Assembly's intent to regulate the field of surface mining comprehensively and exclusively can be discerned from a reading of the entire Surface Mining Act, and asserts that the zoning ordinance is thus invalid under the doctrine of field preemption. In addition, Hoffman Mining argues that the zoning ordinance's setback provision is inconsistent with the Surface Mining Act's setback provision, and thus is invalid under the doctrine of conflict preemption. The Commonwealth Court declined to address Hoffman Mining's assertions of implicit preemption, reasoning that the General Assembly had spoken as to the matter of preemption by including an express preemption clause. Therefore, in the Commonwealth Court's view, an examination of whether the General Assembly implicitly intended to preempt the field was not only unnecessary, but also "inappropriate." *Hoffman Mining*, 958 A.2d at 608. Based on our precedents discussed immediately below, we cannot agree.

In *Cellucci v. General Motors Corporation*, 550 Pa. 407, 706 A.2d 806 (1998), we considered whether a federal statute, the National Traffic and Motor Vehicle Safety Act

rules and regulations as may be deemed necessary by the department for the fulfillment of the purposes, and provisions of this act, ... for the health and safety of those persons engaged in the work and for the protection of the general public....
52 P.S. § 1396.4b(a) (emphasis added).
We cannot conclude that subsection 1396.4b(a) alters our interpretation of the Surface Mining Act's express preemption clause, *see supra*, or other provisions, *see infra*. Subsection 1396.4b(a) does not mention location or siting of surface mining within a municipality, and it does not mention zoning ordinances. It refers only to "surface mining operations." For the many reasons discussed throughout this text, we decline to interpret "surface mining operations" to encompass location and siting of a surface mine within a municipality, and accordingly we decline to conclude that the location and siting of a surface mine within a municipality is within the exclusive jurisdiction of the Department of Environmental Protection, to the total exclusion of any local zoning ordinance.

(hereinafter the "Safety Act"),[17] preempted state tort claims grounded in failure to equip a vehicle with air bags. We first interpreted the preemption clause of the Safety Act, and concluded that it did not serve to preempt expressly the state causes of action at issue. *Id.* at 809. We then considered whether Congress implicitly intended to preempt such causes of action, citing *Freightliner Corp. v. Myrick,* 514 U.S. 280, 288, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995), for the following proposition: "the existence of an express preemption clause does not preclude an implied preemption analysis, even though it may support the inference that no implied preemption exists." *Id.* Following review of the relevant federal law and the state claims, we concluded that allowing the state claims, and potentially imposing liability on a manufacturer for failing to install air bags, would be in actual conflict with federal law, which permitted a manufacturer to chose among three restraint options, of which air bags was only one. *Id.* at 811. We therefore held that state claims grounded in a failure to equip a vehicle with air bags, although not expressly preempted, were impliedly preempted by the federal statute. *Id.* at 811–12.

Although we recognize that the instant appeal involves a question of state law preemption of a local ordinance, we can see no reason why the logic of *Cellucci,* which was set forth in the context of federal preemption of state law, should not apply. We therefore conclude that it was error for the Commonwealth Court not to consider Hoffman Mining's claims of implicit preemption, and we shall do so, first considering conflict preemption and then field preemption.[18]

17. 49 U.S.C. §§ 30101–33118.

18. Although the Commonwealth Court did not consider Hoffman Mining's assertions of implicit preemption, we see no need for remand. Our grant of allowance of appeal encompassed preemption generally, and the parties have thoroughly briefed the matter.

For its assertions of implicit preemption, Hoffman Mining relies on the five factors that the Commonwealth Court set forth in *Duff v. Township of Northampton,* 110 Pa.Cmwlth. 277, 532 A.2d 500, 505 (1987), *affirmed per curiam,* 520 Pa. 79, 550 A.2d 1319 (1988). The *Duff* factors, are the following:

■ Under the doctrine of conflict preemption, a local ordinance that irreconcilably conflicts with a state statute is invalid. *See* text, *supra.* A conflict is irreconcilable if simultaneous compliance with both the local ordinance and the state statute is impossible. *See Fross, supra* at 1203 n. 12; *Rendell,* 986 A.2d at 81–82; *Marcincin,* 515 A.2d at 1326. In addition, a local ordinance will be invalidated under conflict preemption if it stands "as an obstacle to the execution of the full purposes and objectives" of a statutory enactment of the General Assembly. *Fross, supra* at 1203–1207; *Holt's Cigar,* 608 Pa. 146, 10 A.3d at 907.

We consider first whether it is possible to comply with the setback provisions of both the Adams Township Zoning Ordinance and the Surface Mining Act, and we conclude that it is indeed possible to do so. The zoning ordinance provides that, in the Conservancy (S) District, "[a]ll mining, excavating, and blasting activities shall maintain, at a minimum ... [a] **1,000 foot** horizontal distance from all residential structures[.]" Adams Township Zoning Ordinance § 1413(5)(a). The Surface Mining Act requires a lesser minimum distance: "no operator shall conduct surface mining operations ... within **three hundred feet** of any occupied dwelling." 52 P.S. § 1396.4b(c); *see also* § 1396.4e(h)(5) (same requirement). From these Surface Mining Act provisions, Hoffman Mining infers a statutory mandate that land beyond the 300–foot residential setback is **always** available for mining, presumably unless some other provision of the Surface Mining Act applies. Hoffman Mining's Brief at 12–13. Hoffman Mining argues

(1) Does the ordinance conflict with the state law, either because of conflicting policies or operational effect, that is, does the ordinance forbid what the legislature has permitted?
(2) Was the state law intended expressly or impliedly to be exclusive in the field?
(3) Does the subject matter reflect a need for uniformity?
(4) Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation?
(5) Does the ordinance stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the legislature?
*Duff, supra* at 505.
We observe that the application of the discrete *Duff* factors in our subsequent case law has been refined to an analysis based upon conflict preemption and field preemption.

that if a local zoning ordinance purports to increase the statutory 300–foot setback, then that ordinance directly conflicts with the inferred allowance of mining operations at distances greater than 300 feet from a dwelling under the Surface Mining Act.

We do not accept Hoffman Mining's argument because we cannot conclude, based solely on an inference from the text of the Surface Mining Act, that there is an irreconcilable conflict between the statute and the ordinance. *See Marcincin, supra* at 1326 ("Where an ordinance conflicts with a statute, the will of the municipality as expressed through an ordinance will be respected unless the conflict between the statute and the ordinance is irreconcilable."). Hoffman Mining's inference notwithstanding, the relevant statutory text states **only** that no surface mining operation shall be permitted within 300 feet of an occupied dwelling; the statutory text does not expressly provide that surface mining is permissible beyond 300 feet of an occupied dwelling in all cases, regardless of any reasonable local zoning ordinance responsive to local conditions. We decline to adopt Hoffman Mining's proffered inference from the statutory text. Accordingly, any conflict here between the two enactments is not irreconcilable because it is not impossible to comply with both of them, and an actor is not placed in a position of having to decide which enactment to follow.

 Next, we consider whether the residential setback provision of the zoning ordinance stands as an obstacle to the execution of the full purposes and objectives of the General Assembly in the Surface Mining Act. The zoning ordinance was enacted pursuant to the authority granted to the governing body of each municipality via the MPC. As set forth in the MPC, each municipality has the authority to enact, amend, and repeal zoning ordinances to implement comprehensive plans and to accomplish any of the purposes of the MPC, which include the following: protecting and promoting safety and health; accomplishing coordinated development; guiding uses of land and structures; promoting preservation of natural and historic resources and prime agricultural land; and permitting municipalities to minimize existing or foreseeable

problems. 53 P.S. § 10105 and 10601; *see Miller*, 451 A.2d at 1006 ("[Z]oning ordinances must be enacted for the health, safety or general welfare of the community[,] and their provisions, including setbacks, must advance those purposes.") Furthermore, zoning provisions "should . . . give consideration to the character of the municipality, the needs of the citizens and the suitabilities and special nature of particular parts of the municipality." 53 P.S. § 10603(a).

The Surface Mining Act includes a lengthy statement of purpose, relevant excerpts of which are as follows:

> This act shall be deemed to be an exercise of the police powers of the Commonwealth for the general welfare of the people of the Commonwealth, by providing for the **conservation and improvement of areas of land affected in [ ] surface mining** . . . to aid thereby in the protection of birds and wild life, to enhance the value of such land for taxation, to decrease soil erosion, to aid in the prevention of the pollution of rivers and streams, to **protect and maintain water supply,** to protect land and to *enhance* **land use management and planning,** to prevent and eliminate hazards to health and safety, to promote and provide incentives for the remining of previously affected areas, to allow for government-financed reclamation contracts authorizing incidental and necessary coal extraction, to authorize a remining and reclamation incentive program, to prevent combustion of unmined coal, and generally to improve the use and enjoyment of said lands, to **designate lands unsuitable for mining** and to **maintain *primary* jurisdiction over surface coal mining** in Pennsylvania. It is also the policy of this act to assure that the **coal supply** essential to the Nation's and the Commonwealth's energy requirements, and to their economic and social well-being, is provided and to **strike a balance between protection of the environment and agricultural productivity and the Nation's and the Commonwealth's need for coal** as an essential source of energy.

52 P.S. § 1396.1 (emphases added).

We do not conclude that the zoning provision challenged here, which imposes a 1,000 foot setback from residential

structures and was duly enacted under the MPC, stands as an obstacle to the execution of any of the statutory purposes and objectives set forth in Section 1396.1 of the Surface Mining Act. The zoning ordinance certainly presents no obstacle to a primary purpose of the statute, to "provid[e] for the conservation and improvement of areas of land affected in [ ] surface mining;" nor does the zoning ordinance present any obstacle to the protection and maintenance of the water supply. *Id.* Importantly, there is no indication in the Surface Mining Act of any intent to completely subsume all land use management and planning, to the total exclusion of local zoning authorities, whenever the land use includes surface mining. Rather, the General Assembly's explicit objective is "to **enhance** land use management and planning." *Id.* The word "enhance" must be given its ordinary meaning: "to increase or make greater ... augment." Webster's II New College Dictionary, 1995. Thus, the General Assembly's choice of the word "enhance" suggests an intent to respect the traditionally local nature of land use management and planning, and implies an intended coexistence of local zoning authorities and state authorities with respect to the location and siting of surface mining.

Another purpose of the Surface Mining Act is "to designate lands unsuitable for mining and to maintain **primary** jurisdiction over surface coal mining." *Id.* Neither of these phrases suggests that the General Assembly intended for the state's jurisdiction over the siting and location of surface mining to be exclusive. Surely, if the General Assembly intended to maintain *exclusive* jurisdiction over the siting and location of surface coal mining, which would negate the broad zoning authority conferred by the MPC relative to local land use management and planning, the legislators would have so stated. As the Commonwealth Court concluded, if the Surface Mining Act preempted all local zoning regulations in the area of surface mining, then "surface mines would be permissible in centers of cities, in residentially-zoned districts, etc.—in other words, everywhere and anywhere." *Hoffman Mining,* 958 A.2d at 610. We do not believe that the General Assembly intended such a result. Barring unequivocal legislative di-

rective, we cannot conclude that the General Assembly intended the Surface Mining Act to render empty the MPC-conferred local authority over land use and planning as they might relate to the siting and location of surface mining.[19]

Finally, the General Assembly's explicitly stated policy of the Surface Mining Act is "to assure that the coal supply essential to the Nation's and the Commonwealth's energy requirements, and to their economic and social well-being, is provided and to strike a balance between protection of the environment and agricultural productivity and the Nation's and the Commonwealth's need for coal as an essential source of energy." 52 P.S. § 1396.1. We cannot conclude that full implementation of this policy requires invalidation of a reasonable local zoning ordinance that regulates—**not** the activities of surface mining—but rather the siting and location of surface mining within the municipality via the imposition of a 1,000 foot setback from residential structures. Local authorities are charged with the responsibility of enacting zoning ordinances for the health, safety or general welfare of the community, giving "consideration to the character of the municipality, the needs of the citizens and the suitabilities and special nature of particular parts of the municipality." 53 P.S. § 10603(a); *Miller*, 451 A.2d at 1006. Setbacks are a traditional mechanism by which local authorities seek to fulfill these responsibilities. In the absence of explicit language barring local zoning authorities from establishing reasonable setbacks to address local conditions and needs, we cannot conclude that the balance struck by the General Assembly in the Surface Mining Act was intended to remove this traditional and historical prerogative of local zoning authorities, as it

19. We are aware that the MPC explicitly provides that zoning ordinances may regulate specific, enumerated uses of land, water, and structures "except to the extent that those regulations of mineral extraction by local ordinances and enactments have heretofore been superseded and preempted by the [Surface Mining Act, the Noncoal Act, or several other listed statutes.]" 53 P.S. § 10603(b). This provision does not provide any additional guidance as to precisely what specific regulations are preempted. Rather, it merely reiterates that **to the extent** the Surface Mining Act, or other statute, preempts a local regulation of mineral extraction, that local regulation is invalid, the MPC grant of authority notwithstanding.

applies to the location and siting of surface mining. The statutory policy of providing needed coal while balancing that need with the protection of the environment and agriculture does not require elimination of all local input as to the siting of surface mining within the municipality based on reasonable assessment of local conditions. Thus, we do not interpret the Surface Mining Act, via its policy, purpose, objective or other provisions, to have removed all force from general zoning considerations as they apply to local siting of surface mining. Rather, the policies of the Surface Mining Act can rest alongside zoning ordinances that, upon taking into consideration the special nature of the municipality, require surface mining operations to observe a reasonable residential setback.

In sum, with respect to conflict preemption, we conclude that there is no irreconcilable conflict between the relevant setback provisions of the zoning ordinance and the Surface Mining Act, and that the zoning ordinance does not stand as an obstacle to the execution of the full purposes and objectives of the General Assembly as set forth in the Surface Mining Act. Accordingly, application of conflict preemption principles to the circumstances of this case does not militate in favor of invalidating the zoning ordinance.

Turning to Hoffman Mining's arguments as to field preemption, we likewise cannot conclude that the General Assembly implicitly intended the Surface Mining Act to be exclusive with respect to the location or siting of surface mining within a municipality. As discussed above, in our conflict preemption analysis, an explicit objective of the Surface Mining Act is "to **enhance** land use management and planning," 52 P.S. § 1396.1, and "enhance" must be accorded its ordinary meaning. Had the General Assembly intended to assume total responsibility and authority over local land use management and planning as they apply to surface mining, the wording of the Surface Mining Act would surely have reflected such an intent. We recognize that the Surface Mining Act sets forth certain parameters with respect to where surface mining may **not** be conducted. However, we do not interpret these provisions to indicate that the statute has implicitly forbidden all

local zoning enactments concerning the location and siting of surface mining.

Hoffman Mining also asserts that the field of surface mining reflects a need for uniformity which is reflected in the comprehensive statutory scheme of the Surface Mining Act. Hoffman Mining argues that a "lack of uniformity would stand as an obstacle to the comprehensive regulatory scheme of the [Surface Mining Act]." Hoffman's Brief at 24. The comprehensive regulatory scheme set forth in the Surface Mining Act concerns surface mining activities and conservation and reclamation procedures and protocols, including licensing, permitting, reclamation, blasting, notice, bonding, pollution control, remedies, penalties, etc. As we have discussed *supra,* the location and siting of surface mining within a municipality are not included within the statutory definition of surface mining activities, and we do not discern an intent on the part of the General Assembly to deprive local zoning authorities of their MPC-enabled power and responsibility to consider local conditions when deciding *where* surface mining should be sited within their communities.

Having considered all of Hoffman Mining's arguments for express, conflict, and field preemption, we conclude that the Surface Mining Act does not preempt, explicitly or impliedly, the challenged residential setback provision of the Adams Township Zoning Ordinance. This holding is consistent with our recent decision in *Huntley,* wherein we held that the express preemption clause of the Oil and Gas Act did not preempt a local zoning ordinance that barred drilling, except as a conditional use, in certain areas of the municipality. *Huntley,* 964 A.2d at 855, 866. We concluded in *Huntley* that a well's placement at a certain location was not a "feature" of its operation and that the zoning ordinance at issue served different purposes from those enumerated in the Oil and Gas Act. *Id.* at 864–66. And, the Oil and Gas Act is not silent as to the matter of where wells can be sited; we recognized that under the provision entitled "Well location restrictions," the Act sets forth a number of setbacks, barring, for example, the drilling of wells within 200 feet of any existing building or

water well or within 100 feet of any stream or body of water, unless a variance or waiver is granted. *Huntley, supra* at 861; 58 P.S. § 601.205(a) and (b). Thus, although the Oil and Gas Act unquestionably included some restrictions with respect to where oil and gas wells could be sited, we concluded that additional land use restrictions, enabled by the MPC and enacted by the local zoning authority, were not precluded. Our conclusion in the instant case is similar.

It bears noting that the ordinance at issue in *Huntley* was farther-reaching than the ordinance at issue here. In *Huntley*, the ordinance barred drilling altogether in certain areas of the municipality, unless a variance or waiver was granted. In contrast, the ordinance at issue here only imposes a setback from residential structures that is greater than the setback imposed under the Surface Mining Act. We contemplated a similar situation in *Miller, supra* at 1006, wherein we concluded as follows: if municipalities can exclude mining from certain districts, then surely they can "impose the lesser burden of requiring setbacks for [mining] in zones in which it is permitted."

In sum, with enactment of the Surface Mining Act, the General Assembly did not expressly or impliedly preempt a local zoning ordinance that imposes a residential setback from mining activities. We do not discern an intent of the General Assembly to completely deprive local zoning authorities of their MPC-enabled authority and responsibility for land use management and planning as applied to the location and siting of surface mining in their municipalities.

Accordingly, we affirm the order of the Commonwealth Court.

Justices EAKIN, BAER, and ORIE MELVIN join the opinion.

Chief Justice CASTILLE files a concurring opinion, in which Justices TODD and ORIE MELVIN join.

Justice SAYLOR files a concurring opinion, in which Chief Justice CASTILLE and Justice ORIE MELVIN join.

Chief Justice CASTILLE, concurring.

I concur in the result reached by the Majority and join its analysis, insofar as that analysis goes; I also join Mr. Justice Saylor's Concurring Opinion, as I will explain below. The Majority appears to review all of appellant's claims through the prism of the express preemption clause of the Surface Mining Conservation and Reclamation Act (the "Surface Mining Act"), 52 P.S. § 1396.17a. While such an analysis accounts for some of appellant's arguments, the bulk of appellant's field and conflict preemption points are not directly addressed. The oversight may be a consequence of imprecise briefing by appellant, which conflates distinct legal theories concerning preemption. Nevertheless, the blended arguments implicate separate theories easily discernible in terms of existing preemption paradigms, and I believe it is prudent to acknowledge and address the points.

As the Majority observes, appellant poses its claims in terms of a five-factor test formulated by the Commonwealth Court in *Duff v. Township of Northampton*, 110 Pa.Cmwlth. 277, 532 A.2d 500 (1987), without acknowledging subsequent binding precedent from this Court that refined the *Duff* articulation of the law of preemption in Pennsylvania. *See* Majority Op. at 623 n. 18, 32 A.3d at 602 n. 18. As a direct result, appellant both comingles its arguments regarding the distinct types of preemption recognized by this Court and fails to address relevant factors in a cogent and persuasive manner. Nonetheless, to the extent that its arguments implicate current preemption paradigms, it is clear that appellant posits, in addition to the argument addressed by the Majority: (1) that the field of surface mining, and consequently the Adams Township Ordinance (the "Ordinance") and its setback requirement provision, are preempted expressly by Section 17.1 of the Surface Mining Act, 52 P.S. § 1396.17a; (2) that the field of surface mining and the Ordinance are preempted expressly by Section 4.2(a) of the Surface Mining Act, 52 P.S. § 1396.4b; and (3) that Section 1413.5(a) of the Ordinance is in conflict with Section 4.2(c) of the Surface Mining Act, and is

thusly preempted under conflict theory.[1] Appellees take the same narrow view of appellant's arguments as the Majority, and they do not respond to most of appellant's identifiable claims. I briefly address each of these additional theories raised by appellant, in order to explain the reasons why I believe that the Commonwealth Court decision should be affirmed.

## I. Field Preemption

## A. Section 17.1

Section 17.1 states:

Except with respect to ordinances adopted pursuant to . . . the "Pennsylvania Municipalities Planning Code" [the "MPC"], all local ordinances and enactments purporting to regulate surface mining are hereby superseded. **The Commonwealth by this enactment hereby preempts the regulation of surface mining as herein defined.**

52 P.S. § 1396.17a (citation and footnote omitted) (emphasis added). Appellant argues that, in *Miller & Son Paving, Inc. v. Wrightstown Township*, 499 Pa. 80, 451 A.2d 1002 (1982) ("*Miller*"), this Court held that the second clause of Section 17.1 preempts the field of surface mining regulation, rendering invalid any local ordinances, including those adopted pursuant to the MPC after the effective date of the Surface Mining Act.

---

**1.** The Majority's narrow reading of appellant's first two arguments, *i.e.*, that the Surface Mining Act preempts Section 1413.5(a) of the Ordinance rather than the entire Ordinance, is to a degree understandable, as appellant argues field and conflict preemption concurrently in trying to meet the *Duff* test. Notably, however, appellant did not restrict its prayer for relief to the striking of Section 1413.5(a) of the Ordinance as invalid. *See* Appellant's Brief at 19 ("Section 17.1 preempts all regulation of surface mining."); *id.* at 23 ("Section 4.2(a) is likewise an expression of legislative intent to preempt the field of regulation of coal surface mining."). I believe that appellant's field preemption arguments should be addressed as formulated, and rejected on the merits, as I explain *infra*, in addition to any conflict preemption arguments.

A potential threshold question is whether appellant preserved its field preemption arguments regarding Sections 17.1 and 4.2(a) of the Surface Mining Act. The record suggests that appellant may not have preserved the Section 4.2(a) issue, but appellees do not argue waiver, and the Majority does not find waiver. In any event, the issue is one of law easily resolved on the existing record, as I will explain.

*See* Appellant's Brief at 14 (*Miller* "Court held that . . . all ordinances, **including** zoning ordinances enacted after January 1, 1972, that regulate surface mining operations would be preempted by the [Surface Mining Act]") (emphasis in original).

Appellant's interpretation of *Miller* is unpersuasive. At issue in *Miller* was a local zoning ordinance pre-dating the Surface Mining Act, which the Court held was "neither superseded nor preempted" and was valid. The Court did not decide the validity of any local ordinances promulgated after the effective date of the Surface Mining Act, and indicated only, contrary to appellant's argument, that "the Legislature could not have intended in 1971 to displace all existing and future local regulation of surface mining." 451 A.2d at 1005. I would reject appellant's *Miller*-based **field preemption** argument on this ground.[2]

Notably, appellant does not offer a well-developed field preemption argument premised on the plain language of Section 17.1. To the extent any such argument is intended, appellant seems to claim that the second clause of Section 17.1 should be read independently of the first clause, as an absolute bar to all local regulation of surface mining enacted after 1972. *See* Appellant's Brief at 17–20 (comparing Section 17.1 of the Surface Mining Act with Section 602 of the Oil and Gas Act). I incline toward Justice Saylor's view that, in Section 17.1 of the Surface Mining Act, the General Assembly intended the terms "supersede" and "preempt" as synonyms, and thereby meant "to except ordinances adopted pursuant to the [MPC] from the scope of the intended preemption," regardless of

**2.** Appellant also relies on *Pennsylvania Coal Co. v. Township of Conemaugh,* 149 Pa.Cmwlth. 22, 612 A.2d 1090 (1992) (*"Conemaugh "*) and *Huntley & Huntley, Inc. v. Borough Council of Borough of Oakmont,* 600 Pa. 207, 964 A.2d 855 (2009) (*"Huntley "*) to support its interpretation of *Miller* and its field preemption claim. Both *Conemaugh* and *Huntley,* however, addressed not field preemption (*i.e.,* validity of local regulation *in toto* ), but the validity of specific ordinances under a theory of conflict preemption. In both cases, the issue was whether distinct provisions of local ordinances regulated zoning rather than mining/drilling operations; to the extent the provisions addressed zoning aspects, they were valid. *Conemaugh* and *Huntley* are inapposite as to the issue of field preemption.

whether the ordinances were adopted before or after the effective date of the Surface Mining Act. *See* Concurring Op. at 640–41, 32 A.3d at 612–13. Absent the *Miller* decision, I would be inclined to interpret both clauses of Section 17.1 coextensively, to save from preemption all MPC-enabled local ordinances. Even interpreted independently, however, the second clause of Section 17.1 reflects the General Assembly's intent to permit local regulation as described in the Majority's analysis, and thereby forecloses appellant's field preemption claim.[3,4]

## B. Section 4.2(a)

Similarly, I would reject appellant's alternate claim, which is that Section 4.2(a) reveals the General Assembly's intent to preempt all local ordinances in the field of surface mining. In relevant part, Section 4.2(a) provides:

> [A]ll surface mining operations coming within the provisions of this act shall be under the **exclusive jurisdiction** of the [Department of Environmental Resources ("DER")] and shall be conducted in compliance with such reasonable rules and regulations as may be deemed necessary by the [DER] for the fulfillment of the purposes, and provisions of this act, and other acts where applicable ... for the health and

**3.** Moreover, in light of the plain language of Section 17.1, which contemplates at least some local regulation of surface mining (specifically MPC-promulgated ordinances), I would reject appellant's argument that the General Assembly's legislative scheme is so pervasive and comprehensive as to implicitly preclude all local regulation of surface mining. *See* Appellant's Brief at 24–25. *Accord Holt's Cigar Co. v. City of Philadelphia*, 608 Pa. 146, 10 A.3d 902, 921 n. 6 (2011) (Castille, C.J., dissenting, joined by Todd and Orie Melvin, JJ.) (citing *Mars Emergency Med. Serv., Inc. v. Township of Adams*, 559 Pa. 309, 740 A.2d 193, 195 (1999)).

**4.** I also note that appellant does not develop an argument challenging the Commonwealth Court's conclusion that the setback provision of the Ordinance is "quintessential land use control logically connected to land use planning" and, as a result, is a zoning regulation expressly saved from preemption by Section 17.1. *Hoffman Mining Co. v. Zoning Hearing Bd. of Adams Township*, 958 A.2d 602, 611 (Pa.Cmwlth.2008); *but see Huntley*, 964 A.2d at 864 & nn. 10, 11 (regulation of non-zoning aspects of oil and gas drilling through MPC-enabled local legislation not permitted; question whether localities can increase state-prescribed setbacks through zoning legislation).

safety of those persons engaged in the work and for the protection of the general public.

52 P.S. § 1396.4b(a) (emphasis added). Appellant claims that this Court has interpreted a similar provision of the Anthracite Strip Mining and Conservation Act (the "Strip Mining Act") as preempting the field of anthracite strip mining regulation. *See Harris–Walsh, Inc. v. Borough of Dickson City,* 420 Pa. 259, 216 A.2d 329 (1966) (*"Harris"*). In *Harris,* the Court held that the Strip Mining Act provision granting "exclusive jurisdiction" to the Department of Mines and Mineral Industries over "all coal stripping operations coming within the provisions of th[e Strip Mining Act]" indicated the General Assembly's intention that "the Commonwealth, and only the Commonwealth, shall regulate the anthracite strip mining industry [and] preclude legislative action in the same field by any political subdivision." *Id.* at 336; *accord Council of Middletown Township v. Benham,* 514 Pa. 176, 523 A.2d 311, 314–15 (1987) ("[t]otal preemption is the exception and not the rule" and has been recognized only in three areas: alcoholic beverages, banking, and anthracite strip mining).

The Majority does not address appellant's argument, and fails to address the *Harris* decision. In my view, the case plainly is distinguishable.

Notably, the Strip Mining Act at issue in *Harris* did not contain a counterpart to Section 17.1 of the Surface Mining Act and did not otherwise expressly address the preemptive effect of the state law on local legislation. The *Harris* Court considered the plain language, and the textual and historical contexts in which the phrase "exclusive jurisdiction" of Section 10 of the Strip Mining Act operated, and interpreted it as an expression of legislative intent to preempt that field. With respect to the Surface Mining Act, however, Section 4.2 has to be read *in pari materia* with Section 17.1, which protects local zoning ordinances adopted pursuant to the MPC. For the entire Surface Mining Act to be effective and for its interpretation to avoid absurd results, the phrase "exclusive jurisdiction" within Section 4.2 of the Surface Mining Act cannot be held to mean what appellant advocates, *i.e.,* that the General

Assembly sought to occupy the field of surface mining regulation so that all local ordinances, including those adopted pursuant to the MPC, are invalid. *See* 1 Pa.C.S. § 1922(1), (2). On these grounds, I would reject appellant's suggestion that we apply *Harris* to Section 4.2 of the Surface Mining Act and accept its derivative field preemption argument.

## II. Conflict Preemption

Finally, I note that I agree with the Majority's conflict preemption analysis, because it squares with my dissenting expression in *Holt's Cigar Co. v. City of Philadelphia,* 608 Pa. 146, 10 A.3d 902 (2011) (*"Holt's "*). In a conflict preemption analysis, the Court examines whether the state statute and the local enactment are irreconcilable, and whether the local enactment stands as an obstacle to the execution of the full purposes and objectives of the General Assembly. *Fross v. County of Allegheny,* 20 A.3d 1193, 1203 (Pa.2011). Appellant argues that the Ordinance stands as an obstacle to the execution of the General Assembly's policies, as expressed in the Surface Mining Act, which "by implication" prohibits setbacks in excess of 300 feet. Appellant claims that, because the Surface Mining Act addresses and sets a 300–foot setback, the state statute is irreconcilable with the Ordinance's 1,000–foot setback provision, which is thereby preempted. Furthermore, appellant claims that the Ordinance's 1,000–foot setback denies appellant access to 88 percent of the coal on its parcel, contrary to the Surface Mining Act's purpose to balance environmental and agricultural interests with energy production goals. Appellant's Brief at 12–13, 19, 23, 26.

The state and local enactments are not irreconcilable. Appellant can comply with both the statewide (300 feet) and the local (1,000 feet) setbacks, at the same time, by mining outside a 1,000–foot perimeter around any occupied dwellings. *See, e.g., Mazzo v. Bd. of Pensions & Retirement,* 531 Pa. 78, 611 A.2d 193 (1992) (irreconcilable conflict where local ordinance prohibited reinstatement of city employee on terms mandated by controlling state enactment). Appellant does not disagree, but claims instead that the irreconcilable conflict is between

the Ordinance and what it says is the silent protection the Surface Mining Act setback provision affords drilling outside the 300–foot perimeter around occupied dwellings. This sort of extrapolation from silence theory found some currency with the majority opinion in *Holt's*, but I am no more convinced by the theory here than I was in *Holt's*. Consistently with my position in *Holt's*, the Court cannot imply, solely from the Surface Mining Act's setback provision, a tacit legislative imperative that surface mining outside a 300–foot perimeter is affirmatively protected by the state statute against locally-tailored regulation. *See* Majority Op. at 625, 32 A.3d at 602–03; *accord Holt's*, 608 Pa. 146, 10 A.3d at 925–26 (Castille, C.J., dissenting, joined by Todd and Orie Melvin, JJ.) (local ordinance curtailing sales of dual use items used as drug paraphernalia is not preempted because protection of such sales could not be implied from silence of state statute criminalizing use of drug paraphernalia; local and state enactments were complementary). But, the inquiry does not end here.

Rather, the controlling inquiry is whether the Adams Township Ordinance's 1,000–foot setback is an obstacle to accomplishing the full purposes and objectives of the Surface Mining Act. The General Assembly stated the purposes of the Surface Mining Act as follows:

[The Surface Mining Act] shall be deemed to be an exercise of the police powers of the Commonwealth for the general welfare of the people of the Commonwealth, by providing for the conservation and improvement of areas of land affected in the surface mining of bituminous and anthracite coal and metallic and nonmetallic minerals, to aid thereby in the protection of birds and wild life, to enhance the value of such land for taxation, to decrease soil erosion, to aid in the prevention of the pollution of rivers and streams, to protect and maintain water supply, to protect land and to enhance land use management and planning, to prevent and eliminate hazards to health and safety, to promote and provide incentives for the remining of previously affected areas, to allow for government-financed reclamation contracts authorizing incidental and necessary coal extraction, to authorize

a remining and reclamation incentive program, to prevent combustion of unmined coal, and generally to improve the use and enjoyment of said lands, to designate lands unsuitable for mining and to maintain primary jurisdiction over surface coal mining in Pennsylvania. It is also the policy of this act to assure that the coal supply essential to the Nation's and the Commonwealth's energy requirements, and to their economic and social well-being, is provided and to strike a balance between protection of the environment and agricultural productivity and the Nation's and the Commonwealth's need for coal as an essential source of energy. 52 P.S. § 1396.1 (Purpose of Act).

In its brief, appellant notably quotes a severely truncated version of Section 1 and then emphasizes only the energy goals of the Surface Mining Act. Appellant forwards a claim that the Ordinance upsets the balance sought by the Surface Mining Act between protection of the environment and agricultural productivity and the need for coal as an essential source of energy. In support of this claim, however, appellant offers evidence only of the Ordinance's impact on its own use of land, an alleged loss of production of 88 percent, while offering as self-evident a claim of harmful effect deriving from lack of uniformity in setback provisions.

I would reject this conflict preemption theory for two reasons. First, on balance, the Ordinance's setback provision plainly appears to forward the General Assembly's purposes: to aid in the conservation and improvement of land affected by surface mining, to enhance the value of land for taxation, to protect land and to enhance land use management and planning, to prevent and eliminate hazards to health and safety, generally to improve the use and enjoyment of said lands, and to designate lands unsuitable for mining. Tailoring setback provisions to local conditions and departing from uniformity in this respect is not, on its face, fatal to the Surface Mining Act. Second, appellant offers no analysis of the Ordinance's overall impact in light of the multiple factors actually outlined by the Surface Mining Act, *i.e.,* the environmental and agricultural benefits to be derived from the Ordinance as compared to the

burden on the overall production of coal in Adams Township or the Commonwealth. In theory, I suppose, such evidence could show that, indeed, the Adams Township Ordinance setback requirements are overly restrictive. But, that is by no means self-evident. Because appellant did not adduce sufficient proof addressing the relevant Surface Mining Act factors, it did not carry its burden of proving that the Ordinance interferes with the purposes and objectives of the General Assembly.

For these reasons, in addition to the reason identified by the Majority and Justice Saylor, I concur in the mandate to affirm.

Justices TODD and ORIE MELVIN join this concurring opinion.

Justice SAYLOR, concurring.

I join the majority's well-reasoned opinion.

I write only to observe that much of the difficulty in this area of the law stems from the decision in *Miller & Son Paving, Inc. v. Wrightstown Township*, 499 Pa. 80, 451 A.2d 1002 (1982). Specifically, the *Miller* Court discerned a difference between the concepts of supersedure and preemption in construing the section of the Surface Mining Act addressing the statute's effect on local ordinances, reasoning that the statutory reference to the former term suggested a temporal overlay. *See id.* at 86–87, 451 A.2d at 1005. In the preemption context, however, these terms are commonly employed as synonyms. For example, the pervasively applicable federal conflict preemption provision under Section 514(a) of the Employee Retirement Income Security Act is phrased in terms of supersedure, although it is widely understood to embody preemption. *See* 29 U.S.C. § 1144(a).

Absent *Miller*, I would read Section 17.1, in accordance with its rather natural and straightforward purport, to except ordinances adopted pursuant to the Municipalities Planning

Code from the scope of the intended preemption.[1] While I realize that the social landscape has changed significantly since *Miller*, particularly in terms of the Commonwealth's and the Nation's energy needs and the increasing desire for domestic energy production, I would leave it to the Legislature—in its role as the policy-making branch—to modify the choice it made in Section 17.1 to preserve a substantial degree of local control over land use planning, even in the surface mining arena, via the lawmaking procedures authorized in the Municipalities Planning Code. Notably, the Legislature has made such an adjustment in connection with the Oil and Gas Act, *see* 58 P.S. § 601.602,[2] but, to date, has not done so for the Surface Mining Act.

Chief Justice CASTILLE and Justice ORIE MELVIN join this concurring opinion.

1. As the majority explains, Section 17.1, entitled "Local ordinances," prescribes as follows:

 *Except with respect to ordinances adopted pursuant to the act of July 31, 1968 (P.L. 805, No. 247), known as the "Pennsylvania Municipalities Planning Code,"* all local ordinances and enactments purporting to regulate surface mining are hereby superseded. The Commonwealth by this enactment hereby preempts the regulation of surface mining as herein defined.

 52 P.S. § 1396.17a (emphasis added; footnote omitted).

2. As the majority observes, in 1992, the Legislature added the following language to the otherwise very similar preemption language of the Oil and Gas Act: "No ordinances or enactments adopted pursuant to the aforementioned acts [including the Municipalities Planning Code] shall contain provisions which impose conditions, requirements or limitations on the same features of oil and gas well operations regulated by this act or that accomplish the same purposes as set forth in this act." 58 P.S. § 601.602.