IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lexington National Insurance Company, | : | **CASES CONSOLIDATED** |
| Appellant | : | |
| | : | |
| v. | : | No. 1078 C.D. 2020 |
| | : | |
| Delaware County | : | |
| | | |
| In Re: International Fidelity Insurance Company | : | |
| | : | |
| | : | No. 1079 C.D. 2020 |
| Appeal of: International Fidelity Insurance Company | : | |
| | : | Argued: March 9, 2022 |

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE ELLEN CEISLER, Judge
            HONORABLE LORI A. DUMAS, Judge
            HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED: May 10, 2022

Lexington National Insurance Company (Lexington) and International Fidelity Insurance Company (International Fidelity) (together, Insurers) appeal from two September 25, 2020 Orders of the Court of Common Pleas of Delaware County (Trial Court) denying their Petitions to Refund Bail Deposits (Petitions). The issue before this Court is whether Delaware County Local Criminal Rule 531(e)(3)(d) (Local Rule 531(e)(3)(d)), which requires corporate sureties to post financial security with Delaware County (County) as a condition of conducting bail bond business in the County, is preempted by the Act of July 2, 2015, P.L. 110, No. 16,

42 Pa. C.S. §§ 5741-50 (commonly known as Act 16), or The Insurance Department Act of 1921 (Insurance Act), Act of May 17, 1921, P.L. 789, *as amended*, 40 P.S. §§ 1-326.7.

For the reasons that follow, we conclude that: (1) Local Rule 531(e)(3)(d) is not preempted by either Act 16 or the Insurance Act; and (2) the County has express authority to require corporate sureties conducting bail bond business in the County to post financial security pursuant to Pennsylvania Rule of Criminal Procedure 531(A)(3) (Rule 531(A)(3)). Accordingly, we affirm the Trial Court's Orders.

## Background

In July 2015, the General Assembly enacted Act 16 to eliminate the varying rules governing bail bonds in Pennsylvania and to establish a statewide, uniform system of regulation of the bail bond industry. As a result of Act 16, bail bondsmen now must be licensed by the Pennsylvania Insurance Department (Insurance Department) and may conduct bail bond business only if they are affiliated with an insurance company and their bonds are underwritten by an insurance company pursuant to a qualified power of attorney.[1] Act 16 became effective on October 30, 2015.

---

[1] Section 2 of Act 16 states: "*No person shall engage in, or continue to engage in, the business of a bail bondsman unless the person has been licensed by the [Insurance D]epartment as an insurance producer* under Article VI-A of [the Insurance Act, added by the Act of December 6, 2002, P.L. 1183,] and possesses a casualty line of authority." 42 Pa. C.S. § 5742 (emphasis added). Section 4 of Act 16 states:

> *A bail bondsman shall only be authorized to conduct business in a county when the bail bondsman provides all of the following documents* to the office of the clerk:
>
> (1) A copy of the license issued to the bail bondsman by the [Insurance D]epartment.

**(Footnote continued on next page…)**

2

In March 2016, the County adopted Local Rule 531(e)(3)(d),[2] which states:

> 3. *Requirements for Approval. To become qualified to act as a corporate surety, or agent thereof, with respect to the posting of bail bonds in the [County], a corporate surety and its agents must*:
>
>> d) *Post with the [County's] Office of Judicial Support as security the minimum sum of $50,000 in United States currency or unencumbered securities of the United States Government*, which will entitle the corporate surety to post bond in the aggregate sum of $500,000 *or post $75,000 in US currency or unencumbered securities of the US Government*, which will entitle the corporate surety to post bond in the amount of $1,000,000, and *by further posting the sum required for each individual bond or undertaking with the bail authority.*

Del. Cnty. Local Crim. R. 531(e)(3)(d) (emphasis added). In compliance with Local Rule 531(e)(3)(d), Lexington deposited a total of $325,000 and International Fidelity deposited a total of $100,000 with the County's Office of Judicial Support.

---

> (2) A statement identifying an office address for service of legal process.
>
> (3) A qualifying power of attorney issued by an insurer authorizing the bail bondsman as a producer on behalf of the insurer. The qualifying power of attorney must set forth, in clear and unambiguous terms, the maximum monetary authority of the bail bondsman per bond.

*Id.* § 5743.1 (emphasis added).

[2] Local Rule 531(e)(3)(d) "applies to *any corporate surety and its agents seeking to post a bond* in satisfaction of the full amount of the monetary condition of a defendant's release on bail." Del. Cnty. Local Crim. R. 531(e)(1) (emphasis added). The rule defines "corporate surety" as "any corporation or partnership which engages in the business of providing bail, providing or soliciting bail undertakings, or providing or soliciting indemnity or court indemnity to others on bail undertakings." *Id.* 531(e)(2).

On July 15, 2021, Insurers filed their Petitions in the Trial Court, seeking refunds of their bail deposits and asserting that Local Rule 531(e)(3)(d) is preempted by state law. In particular, Insurers asserted that Act 16 eliminated the need for bail bondsmen to post collateral, because they are now licensed and regulated by the Insurance Department; the Insurance Department has the exclusive right to regulate the financial and security requirements of surety companies; and the Insurance Act preempts local rules requiring security deposits for licensed bail bond insurers. Thus, Insurers argued that Local Rule 531(e)(3)(d) is preempted by Act 16 and the Insurance Act.

The County filed Answers to the Petitions, asserting that Act 16 does not preempt Local Rule 531(e)(3)(d) and that Rule 531(A)(3) expressly authorizes the County to impose additional requirements on corporate sureties. Rule 531(A)(3) provides in relevant part: "*Subject to any additional requirements prescribed by local rule of court*, the following shall be *qualified to act as sureties*: . . . surety companies approved by the court and authorized to do business in the Commonwealth of Pennsylvania." Pa.R.Crim.P. 531(A)(3) (emphasis added).

On September 25, 2020, after a hearing, the Trial Court denied Insurers' Petitions, concluding that Act 16, by its plain language, applies only to bail bondsmen, not to corporate sureties. The Trial Court also concluded that Rule 531(A)(3) expressly authorizes the County to impose additional requirements on sureties such as Insurers. In its subsequent Pa.R.A.P. 1925(a) Opinion, the Trial Court explained its reasoning as follows:

> *Act 16 . . . specifically states that the requirements included within apply to bail bondsmen.* Should the legislature have intended to impose the same uniform statewide regulations on both bail bondsmen and sureties, it is most logical that both terms would have been included in the relevant section upon which [Insurers] center[] [their] argument[s].

4

In contrast, only the term "bail bondsmen" appears in the section [of Act 16] at issue.

> [Rule] 531([A])[(3)], Qualifications of a Surety, states that additional requirements may be imposed upon corporate securities by way of local rules of court. . . .

> *As the licensing requirements for bail bondsmen in Act 16 . . . have no effect upon corporate sureties, [Rule] 531([A])[(3)] expressly permits the County to impose additional requirements upon corporate sureties in bail matters.* Pursuant to that ability, the County, by way of Local Rule 531(e)(3)(d), lawfully imposed the requirement of a corporate surety to post a deposit with the [County] in order to issue bail bonds within its jurisdiction.

Trial Ct. Op., 6/28/21, at 5-6 (emphasis added).[3] Insurers now appeal to this Court.[4]

## Analysis

On appeal, Insurers assert that the Trial Court erred in denying their Petitions because Local Rule 531(e)(3)(d), which requires corporate sureties to post financial security with the County in order to conduct bail bond business in the County, is preempted by Act 16 and the Insurance Act.

Act 16 requires that all bail bondsmen in the Commonwealth be licensed insurance agents with a casualty line of authority. 42 Pa. C.S. § 5743.1. Under Act 16, bail bondsmen can issue bonds only as an appointed representative of a licensed insurance company. *Id.* The Insurance Department issues a license to the bondsman, who acts pursuant to a power of attorney issued by a licensed surety. *Id.* According to Insurers, that is all that is required for a bondsman or surety to conduct bail bond business in the Commonwealth; the County cannot require additional security.

---

[3] The Trial Court issued identical Orders and Opinions in both consolidated cases.

[4] Because the issue on appeal is purely a question of law, our standard of review is *de novo*, and our scope of review is plenary. *Dooner v. DiDonato*, 971 A.2d 1187, 1193 (Pa. 2009); *Pa. Physical Therapy Ass'n v. Oleksiak*, 265 A.3d 849, 856 n.7 (Pa. Cmwlth. 2021).

Act 16, however, clearly distinguishes between bail bondsmen and sureties. Act 16 appears in Subchapter B of Chapter 57 of the Judicial Code, which is titled "Bail Bondsmen." Section 1 of Act 16 defines "bail bondsman" as "a person who engages in the business of giving bail as a surety for compensation." 42 Pa. C.S. § 5741. Section 2 of Act 16 defines "surety" as "a person who pledges security, whether or not for compensation, in exchange for the release from custody of a person charged with a crime prior to adjudication." *Id.* § 5742. Section 4 of Act 16 then sets forth the requirements for bail bondsmen to conduct business in a county of the Commonwealth as follows:

> *A bail bondsman shall only be authorized to conduct business in a county when the bail bondsman provides all of the following documents to the office of the clerk*:
>
>> (1) A copy of the license issued to the bail bondsman by the [Insurance D]epartment.
>>
>> (2) A statement identifying an office address for service of legal process.
>>
>> (3) A qualifying power of attorney issued by an insurer authorizing the bail bondsman as a producer on behalf of the insurer. The qualifying power of attorney must set forth, in clear and unambiguous terms, the maximum monetary authority of the bail bondsman per bond.

*Id.* § 5743.1 (emphasis added).

Based on the statute's plain language, it is evident that Act 16 applies only to bail bondsmen, not to corporate sureties. The licensing requirements for bail bondsmen created by Act 16 do not preclude the County from imposing additional security requirements on corporate sureties. Importantly, Act 16 contains no language prohibiting a county from requiring corporate sureties to post additional

6

security. Therefore, we conclude that Act 16 does not preempt Local Rule 531(e)(3)(d).

Next, Insurers assert that the Insurance Act preempts Local Rule 531(e)(3)(d) because the General Assembly intended to fully occupy the field of insurance law. Insurers point out that the Pennsylvania Supreme Court has recognized field preemption in the state-regulated areas of alcohol, banking, medical marijuana, and anthracite mining. Thus, Insurers contend that "[i]nsurance regulation is so comparable to banking regulation that the logic of finding field preemption there applies equally to insurance." Insurers' Br. at 23.

Our Supreme Court has explained the concept of field preemption as follows:

> The state is not presumed to have preempted a field merely by legislating in it. *The General Assembly must clearly show its intent to preempt a field in which it has legislated.* The test for preemption in this Commonwealth is well established. *Either the statute must state on its face that local legislation is forbidden, or "indicate[] an intention on the part of the legislature that it should not be supplemented by municipal bodies."* If the General Assembly has preempted a field, the state has retained all regulatory and legislative power for itself and no local legislation is permitted.

*Nutter v. Dougherty*, 921 A.2d 44, 56 (Pa. 2007) (emphasis added) (citations omitted; brackets in original). Furthermore, "the mere fact that the General Assembly has enacted legislation in a field *does not lead to the presumption that the state has precluded all local enactments in that field*; rather, the General Assembly must *clearly evidence its intent to preempt*." *Hoffman Mining Co., Inc. v. Zoning Hearing Bd. of Adams Twp.*, 32 A.3d 587, 609 (Pa. 2011) (emphasis added).

Here, Insurers assert that Section 201 of the Insurance Act, 40 P.S. § 41, which "charges" the Insurance Department "with the execution of the laws of this Commonwealth in relation to insurance," is effectively a statement of field

7

preemption. However, Insurers cite no legal authority to support this proposition, nor have we found any case interpreting Section 201 in this manner. Indeed, in the 100 years since the Insurance Act's enactment, our appellate courts have not recognized field preemption in the area of insurance, which Insurers plainly admit. *See* Insurers' Br. at 23; *see also Hydropress Env't Servs., Inc. v. Twp. of Upper Mt. Bethel*, 836 A.2d 912, 918 (Pa. 2003) ("Recognizing the clarity with which an intent to preempt must be expressed by the [l]egislature and the significance of such a determination, '[w]e have found an intent to totally preempt local regulation in only three areas: alcoholic beverages, banking and anthracite strip mining.'") (citation omitted). Absent a clear indication by the legislature that it intended to preclude all local regulation in the field of insurance, we decline to find field preemption in this case. *See Council of Middletown Twp. v. Benham*, 523 A.2d 311, 315 (Pa. 1987) (recognizing that "[t]otal preemption is the exception and not the rule").

In the alternative, Insurers contend that the doctrine of conflict preemption applies here, asserting that Local Rule 531(e)(3)(d) conflicts with the provisions of the Insurance Act governing surety agencies. Specifically, the Insurance Act states that if an insurance company meets the Act's solvency and financial qualifications, the Insurance Commissioner "shall issue to such company[] . . . his certificate that it is *authorized to become and be accepted as sole surety on all bonds*, undertakings, and obligations . . . which certificate shall be *conclusive proof of the solvency and credit of such company for all purposes and of its right to be so accepted as such sole surety* and its sufficiency as such." 40 P.S. § 833 (emphasis added). The Insurance Act also states that public officials, including judges of the courts of common pleas, "shall approve the [bond] whenever the conditions of such bond or undertaking are guaranteed" by a licensed surety company and that the Insurance

8

Commissioner's certificate "*shall be conclusive proof of the solvency and credit of such company for all purposes*, and of its qualifications to be so accepted as *such sole surety*, and its sufficiency as such." 40 P.S. § 831 (emphasis added).

Insurers argue that these provisions require the courts of common pleas to accept the bond of any properly certified surety company, including a bail bond, as the "sole surety." Because Local Rule 531(e)(3)(d) requires corporate sureties to post additional financial security in order to conduct bail bond business in the County, Insurers claim that it is in conflict with, and therefore preempted by, the Insurance Act. We disagree.

Our Supreme Court has explained that conflict preemption occurs when "a municipal ordinance cannot be sustained to the extent that it is contradictory to, or inconsistent with, a state statute." *Hoffman*, 32 A.3d at 594. In other words, conflict preemption is applicable when the conflict between a local regulation and a state statute is irreconcilable – i.e., when it would be impossible to comply with both the local regulation and the state law. *Id.* A court will not invalidate a local regulation "unless there is such *actual, material conflict* between the state and local powers that only by striking down the local power can the power of the wider constituency be protected." *Id.* at 594-95 (emphasis added); *see Mars Emergency Med. Servs., Inc. v. Twp. of Adams*, 740 A.2d 193, 196 (Pa. 1999) ("[A]bsent a clear statement of legislative intent to preempt, state legislation will not generally preempt local legislation on the same issue."). Further, municipalities may impose restrictions that are in addition to, and not in conflict with, state regulations. *Hoffman*, 32 A.3d at 612.

We conclude that Local Rule 531(e)(3)(d) neither interferes with nor alters the licensing and certification requirements set forth in the Insurance Act. As

9

explained above, the General Assembly has not evidenced its intent to preempt this type of local regulation relating to bail bonds. Although the Insurance Act addresses other areas of regulation for corporate sureties, it does not contain any specific requirements for sureties that post bail bonds in the courts of common pleas. Therefore, we conclude that the cash security requirements of Local Rule 531(e)(3)(d) are merely *in addition to*, and not in conflict with, the Insurance Act.

Moreover, Rule 531(A)(3) expressly permits the courts of common pleas to impose additional requirements on corporate sureties that conduct bail bond business. Rule 531(A)(3) provides: "*Subject to any additional requirements prescribed by local rule of court*, the following shall be *qualified to act as sureties*: . . . surety companies approved by the court and authorized to do business in the Commonwealth of Pennsylvania." Pa.R.Crim.P. 531(A)(3) (emphasis added).

Insurers attempt to disregard the significance of Rule 531(A)(3) by pointing to Section 5702 of the Judicial Code, which states: "*Except as otherwise provided by this title and the laws relating to the regulation of surety companies*, all matters relating to the fixing, posting, forfeiting, exoneration and distribution of bail and recognizances shall be governed by *general rules*." 42 Pa. C.S. § 5702 (emphasis added).[5] Insurers argue that this language means that "general rules" of procedure, such as Rule 531(A)(3), are superseded by state laws regulating surety companies. In other words, Insurers contend that although the counties can impose additional *procedural* requirements on sureties, they may not supplant the *substantive* requirements established by Act 16 and the Insurance Act. We reject this interpretation.

---

[5] Section 102 of the Judicial Code defines "general rule" as "[a] rule or order promulgated by the governing authority." 42 Pa. C.S. § 102.

10

Insurers effectively argue that Section 5702 of the Judicial Code excepts surety companies from compliance with all "general rules" of procedure governing bail. However, the plain language of Rule 531(A)(3), which is a criminal rule of procedure, unambiguously applies to "sureties" that are licensed and approved by the Insurance Department and expressly allows "local rule[s] of court" to place "additional requirements" on their qualifications to do business in the courts of common pleas. This rule does not run afoul of Section 5702 of the Judicial Code, because, as explained above, the Insurance Act does not contain requirements for sureties that post bail bonds in criminal courts. *See* 42 Pa. C.S. § 5702 (stating that general rules shall apply "[e]xcept as otherwise provided by . . . the laws relating to the regulation of surety companies").

Insurers also rely on *Commonwealth v. Liberty Bail Bonds*, 8 A.3d 1031 (Pa. Cmwlth. 2010), to support their preemption argument. We conclude, however, that Insurers' reliance on *Liberty* is misplaced.

In *Liberty*, a surety agency and its agent filed an application to act as a surety in Montgomery County. Montgomery County denied the application because the agency did not have an office in the county as required by both a Montgomery County local rule and the Judicial Code. This Court determined, however, that the local office rule applied only to bondsmen and not to surety agencies.

> It is undisputed that [the agent] did not have a local office in Montgomery County. *However, it is also undisputed that [he] is a surety agent, not a bondsman, and therefore exempt from the [local rule]. The exemption resides in the initial clauses of [Section 5741 of the Judicial Code], 42 Pa. C.S. § 5741, [which provides] the statutory definition of a professional bondsman.*
>
> The [l]egislature defined a professional bondsman and the class of persons that must maintain a local office. *The [l]egislature explicitly*

11

*excluded surety companies and their agents from the definition of professional bondsmen and thus, the local office requirements. The conditions that a surety company/agent must comply with prior to engaging in a surety business in Pennsylvania are set forth in 40 P.S. § 832 . . . .* A surety must be licensed by the [Insurance] Department, carry a statewide license, must pass certain testing, must be backed by an insurance company and must abide by the specific financing and solvency conditions set forth in 40 P.S. § 832. . . .

. . . .

*The [l]ocal [r]ules provide different sections and rules for sureties and professional bail bondsmen. Neither the corporate surety[] nor the surety agent is required to have a local office operating within Montgomery County.* Only the professional bail bondsman is required to have such [an] office.

*Id.* at 1033-35 (emphasis added) (footnote omitted). Therefore, we concluded that because the surety agent was not a professional bondsman, he was not required to maintain an office in Montgomery County.

Although the *Liberty* Court referenced the Insurance Act's requirements for a surety to conduct business in the Commonwealth, those provisions were not germane to our decision in that case. Rather, we premised our holding on the statutory definition of "professional bondsman" and the legislature's clear intent to distinguish between bondsmen and surety agencies with regard to their office requirements. This Court did not conclude, as Insurers suggest, that the Insurance Act preempted Montgomery County's local rule. Therefore, Insurers' reliance on *Liberty* is inapposite.[6]

---

[6] Since *Liberty* was decided, the General Assembly amended Section 5741 of the Judicial Code. Former Section 5741 defined "professional bondsman," in pertinent part, as "[a]ny person, *other than a fidelity or surety company or any of its officers, agents, attorneys, or employees*, authorized to execute bail bonds or to solicit business on its behalf . . . ." *Formerly* 42 Pa. C.S. § 5741 (emphasis added), *amended by* the Act of July 2, 2015, P.L. 110. "Professional bondsman" **(Footnote continued on next page…)**

## Conclusion

In sum, we conclude that Rule 531(A)(3) explicitly permits a local county to impose additional security requirements on corporate sureties that conduct bail bond business in that county. Neither the Insurance Act nor Act 16 addresses the financial security requirements for corporate sureties that post bail bonds in the courts of common pleas. Rule 531(A)(3) leaves that decision to the local counties. Therefore, the Trial Court properly concluded that: (1) Local Rule 531(e)(3)(d) is not preempted by state law; and (2) the County was expressly authorized to impose additional security requirements on Insurers pursuant to Rule 531(A)(3). Accordingly, we affirm the Trial Court's Orders.

_____

ELLEN CEISLER, Judge

---

has now been replaced with "bail bondsman," which is defined as "[a] person who engages in the business of giving bail as a surety for compensation." 42 Pa. C.S. § 5741.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lexington National Insurance Company, | : | **CASES CONSOLIDATED** |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Delaware County | : | No. 1078 C.D. 2020 |
| | | |
| In Re: International Fidelity Insurance Company | : | |
| | : | |
| | : | |
| Appeal of: International Fidelity Insurance Company | : | |
| | : | No. 1079 C.D. 2020 |

# **O R D E R**

AND NOW, this 10th day of May, 2022, the Orders of the Court of Common Pleas of Delaware County, entered on September 25, 2020, are hereby AFFIRMED.

_____
ELLEN CEISLER, Judge

| Lexington National Insurance Company, | : | **CASES CONSOLIDATED** |
|---|---|---|
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Delaware County | : | No. 1078 C.D. 2020 |
| | | |
| In Re: International Fidelity Insurance Company | : | |
| | : | |
| Appeal of: International Fidelity Insurance Company | : | No. 1079 C.D. 2020 |
| | : | Argued: March 9, 2022 |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE ELLEN CEISLER, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COVEY                                    FILED:  May 10, 2022

Respectfully, I disagree with the Majority's affirmance of the Delaware County (County) Common Pleas Court's (trial court) September 25, 2020 orders. Because the Pennsylvania Insurance Department (Insurance Department) has the exclusive right to determine Lexington National Insurance Company's (Lexington) and International Fidelity Insurance Company's (Fidelity) (collectively, Insurance Companies) qualifications to conduct business in the Commonwealth of Pennsylvania (Commonwealth), I would reverse the trial court's orders.

The Pennsylvania Supreme Court has explained:

> The General Assembly, in recognition of the specialized complexities involved in insurance generally, and in the regulation of this industry in particular, assigned the task of overseeing the management of that industry, in this Commonwealth, to the Insurance Department, the agency having expertise in that field. [*See* Section 201 of The Insurance Department Act of 1921 (The Insurance Department Act),[1]] 40 P.S. § 41[.]

*Aetna Cas. Surety Co. v. Ins. Dep't*, 638 A.2d 194, 200 (Pa. 1994) (quoting *Foster v. Mutual Fire, Marine & Inland Ins. Co.*, 614 A.2d 1086, 1091 (Pa. 1992)); *see also Ciamaichelo v. Indep. Blue Cross*, 909 A.2d 1211, 1216 (Pa. 2006) ("Under [Section 201 of The Insurance Department Act], the [Insurance] Department is charged with executing the insurance laws of the Commonwealth.").

Section 661 of the The Insurance Company Law of 1921 (The Insurance Company Law)[2] specifically sets forth the necessary qualifications for a surety company to execute bonds:

> **Conditions for doing business**
>
> **Every surety company**, <u>**to be qualified to so act as surety or guarantor**</u>, **must be authorized**, **under the laws of the [s]tate or country where incorporated and its charter**, **to guarantee the fidelity of persons holding places of public or private trust**, **and to guarantee the performance of contracts other than insurance policies**, **and <u>to execute bonds and undertakings required or permitted in action or proceedings or by law allowed</u>**, **must**: (a) [c]omply with the requirements of the laws of this [s]tate applicable to such company in doing business therein; (b) must have at least one hundred thousand dollars ($100,000[.00]) invested in securities created by the laws of the United States, or by or under the laws of the [s]tate or country wherein it is incorporated, or in other safe, marketable, and interest-bearing stocks and securities, the value of which shall be at

---

[1] Act of May 17, 1921, P.L. 789, *as amended*, 40 P.S. §§ 1-326.7.
[2] Act of May 17, 1921, P.L. 682, *as amended*, 40 P.S. § 832.

or above par and deposited with or held by the Insurance Commissioner or other corresponding officer of the [s]tate or country in which it is authorized to transact business, in trust for the benefit of the holders of the obligations of such company; (c) its liabilities must not exceed its available assets, which said liabilities, however, shall be taken to be-- (I) its capital stock, (II) its outstanding debts, and (III) a premium reserved equal to fifty per centum of the annual premium on all outstanding risks in force; and (d) such company shall also, before transacting business in this [s]tate under this act, file with the Insurance Commissioner a certified copy of its charter or act of incorporation, (e) a written application to be authorized to do business under this act, and (f) a statement, signed and sworn to by its president or one of its vice presidents and its secretary, or one of its assistant secretaries, stating--(I) the amount of its paid up cash capital, (II) particularly each item of investment, (III) the amount of premium on existing bonds upon which it is surety, (IV) the amount of liability for unearned portion thereof, estimated at fifty per centum of the annual premium on all outstanding premiums for one year or less, and pro rata for terms of more than one year, and (V) the amount of its outstanding debts of all kinds.

**Any surety company which is authorized to do business in this Commonwealth shall not expose itself to any loss or hazard on any one fidelity or surety risk in an amount exceeding ten per centum of its capital and surplus unless it shall be protected in excess of that amount** . . . .

. . . .

No such corporation shall, anything to the contrary in this section notwithstanding, execute suretyship obligations guaranteeing the deposits of any single financial institution in an aggregate amount in excess of ten per centum of the capital and surplus of such corporate surety, unless it shall be protected in excess of that amount by credits in accordance with subdivisions (a), (b), (c), or (d) of this section.

**Upon satisfactory evidence of the violation of this section by any insurance company**, association, or exchange, its members, officers, directors, or attorney-in-fact, **the Insurance Commissioner shall**, in his discretion, **take**, against the offending party, **any one or more of the**

AEC - 3

**following courses of action**: (1) [**r**]**evoke the certificate of authority** of such offending company, association, or exchange; (2) **refuse**, **for a period of not to exceed one year thereafter**, **to issue a new license** to such offending company, association, or exchange; (3) **impose a fine of not more than one thousand dollars for each act** of violation of said section. Any insurance company, or the officers, directors, members, or attorney-in-fact of any insurance company, association, or exchange, or any other person, violating any of the provisions of this section, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine of not more than five hundred dollars ($500.00) for each and every violation, or to imprisonment in the jail of the county in which the offense is committed for a period of not more than six (6) months or both.

40 P.S. § 832 (text bold and underline emphasis added).

In 2015, the General Assembly passed Act 16,[3] effective October 30, 2015, to modernize and regulate the bail industry. Act 16's purpose as described by the senate co-sponsors thereof is to

> provide a uniform collection of rules to regulate this serious profession.
>
> This legislation will provide accountability, professionalism and transparency for the practice of providing bail for those awaiting trial. . . .
>
> This legislation will promote a clean industry **where all of the rules are the same for every corner of the Commonwealth**.

*Senate Co-Sponsorship Memoranda, Senate of Pennsylvania, Session 2015-2016 Regular Session* (emphasis added).[4]

---

[3] Act of July 2, 2015, P.L. 110, No. 16, 42 Pa.C.S. §§ 5741-50 (commonly known as Act 16).

[4] https://www.legis. state.pa.us//cfdocs/Legis/CSM/showMemoPublic.cfm?chamber=S&SPick=20150&cosponld=15846 (last visited May 9, 2022).

Importantly, Section 2 of Act 16 mandates: "**No person shall engage in, or continue to engage in, the business of a bail bondsman unless the person has been licensed by the** [**Insurance D**]**epartment** as an insurance producer under . . . The Insurance Department Act . . . , and possesses a casualty line of authority." 42 Pa.C.S. § 5742 (emphasis added). Section 2 of Act 16 defines a "[b]ail bondsman[]" as "[a] person who engages in the business of giving bail as a surety for compensation." 42 Pa.C.S. § 5741. Section 4 of Act 16 sets forth the following requirements for a bail bondsman to conduct business within each of the Commonwealth's 67 counties:

> A bail bondsman shall only be authorized to conduct business in a county when the bail bondsman provides all of the following documents to the office of the clerk:[5]
>
> (1) **A copy of the license issued to the bail bondsman by the** [**Insurance D**]**epartment**.
>
> (2) A statement identifying an office address for service of legal process.
>
> (3) A qualifying power of attorney issued by an insurer authorizing the bail bondsman as a producer on behalf of the insurer. The qualifying power of attorney must set forth, in clear and unambiguous terms, the maximum monetary authority of the bail bondsman per bond.

42 Pa.C.S. § 5743.1 (emphasis added).

In March 2016, the County passed amended Local Criminal Rule (Local Rule) 531(e)(3)(d), which mandates corporate sureties to post security with the County as a requirement to act as a corporate surety. Specifically, Local Rule 531(e) provides, in relevant part:

> **New Rule 531(e). Corporate Surety.** Pennsylvania Rule of Criminal Procedure [(Rule)] 528(D)(5) recognizes the

---

[5] Section 2 of Act 16 defines "office of the clerk" as "[t]he office of the clerk of the court of common pleas of each judicial district in which a person engages in the business of a bail bondsman." 42 Pa.C.S. § 5741.

surety bond of a surety company authorized to do business in the Commonwealth . . . as an acceptable form of security to satisfy the full amount of the monetary condition of a defendant's release on bail. Rule 531 of the Pennsylvania Rules of Criminal Procedure permits, by local rule of [c]ourt, additional requirement to be imposed on surety companies approved by the [c]ourt. This Regulation sets forth the additional requirement imposed by this Judicial District on corporate sureties and their agents.

l. *Applicability.* This Regulation applies to any corporate surety and its agents seeking to post a bond in satisfaction of the full amount of the monetary condition of a defendant's release on bail.

. . . .

3. *Requirements for Approval.* To become qualified to act as a corporate surety, or agent thereof, with respect to the posting of bail bonds in the Thirty Second Judicial District of Pennsylvania, a corporate surety and its agents must:

. . . .

d) Post with the Office of Judicial Support as security the minimum sum of $50,000[.00] in United States currency or unencumbered securities of the United States Government, which will entitle the corporate surety to post bond in the aggregate sum of $500,000[.00] or post $75,000[.00] in [United States] currency or unencumbered securities of the [United States] Government, which will entitle the corporate surety to post bond in the amount of $1,000,000[.00], and by further posting the sum required for each individual bond or undertaking with the bail authority. Provided, however, that the corporate surety must post additional security with the Office of Judicial Support in the event the corporate surety intends to post bond in excess of $1,000,000[.00]. The additional security to be posted with the Office of Judicial Support must be in units of $50,000[.00] which will entitle the corporate surety to post bond in the additional sum of $1,000,000[.00] per unit. No interest will be paid on any deposits[.]

Del.Co.R.Crim.P. 531(e).[6]

On August 5, 2016, Lexington and Fidelity deposited $325,000.00 and $100,000.00 with the County, respectively, in accordance with Local Rule 531(e)(3)(d). On July 5, 2020, Insurance Companies filed Petitions to Refund Bail Deposits Held by the County as Collateral/Security for Bail Bonds (Bail Refund Petitions) asserting that Local Rule 531(e) is preempted by Act 16 and The Insurance Department Act. The trial court heard oral argument on September 16, 2020. On September 25, 2020, the trial court denied the Bail Refund Petitions reasoning that because Act 16 separately defined bail bondsmen and sureties, and Insurance Companies are sureties under Act 16, and "[Rule] 531(a) . . . states that additional requirements may be imposed upon corporate sureties by way of local rules of court[,]" the County was permitted to enact Local Rule 531(e). Trial Ct. Op. at 6.

Rule 531(A) provides, in relevant part:

**Qualifications of Surety**

**Subject to any additional requirements prescribed by local rule of court**, the following shall be qualified to act as sureties:

(1) owners of cash or securities as provided in Rule 528;

(2) owners of realty located in the Commonwealth as provided in Rule 528(D)(3), or owners of realty located outside the Commonwealth but within the United States as provided in Rule 528(D)(4), provided that satisfactory evidence of ownership or special approval of the court is obtained;

(3) **surety companies** approved by the court and authorized to do business in the Commonwealth [];

(4) **professional bondsmen** licensed under the Judicial Code, 42 Pa.C.S. §§ 5741- 5750[.]

Pa.R.Crim.P. 531(A) (text emphasis added).

---

[6] *See* delcopa.gov/courts/localrules/CriminalRules.pdf (last visited May 9, 2022).

The Majority similarly concludes that, because Act 16 separately defines bail bondsmen and sureties, and Section 4 of Act 16 applies only to bail bondsmen, not sureties, those requirements "do not preclude the County from imposing additional security requirements on corporate sureties. . . . Act 16 contains no language prohibiting a county from requiring corporate sureties to post additional security." *Lexington Nat'l Ins. Co. v. Del. Cnty.* (Pa. Cmwlth. Nos. 1078, 1079 C.D. 2020, filed May 10, 2022), slip op. at 6-7. The Dissent disagrees.

Initially,

> [the Pennsylvania Supreme Court] . . . observe[s] that, in all matters of statutory interpretation, [the Court] appl[ies] the Statutory Construction Act [of 1972[7]], which directs [the Court] to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S. § 1921(a). Generally, a statute's plain language provides the best indication of legislative intent. *Pa. Fin. Resp*[.] *Assigned Claims Plan v. English*, . . . 664 A.2d 84, 87 ([Pa.] 1995) ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words."). Only when the words of a statute are ambiguous will we resort to other considerations to discern legislative intent. 1 Pa.C.S. § 1921(c).

*Johnson v. Phelan Hallinan & Schmieg, LLP*, 235 A.3d 1092, 1097 (Pa. 2020).

"In determining legislative intent, we must read all sections of a statute 'together and in conjunction with each other,' construing them 'with reference to the entire statute' and giving effect to all the statutory provisions." *Ins. Fed'n of Pa., Inc. v. Ins. Dep't*, 970 A.2d 1108, 1114 (Pa. 2009) (quoting *Hous. Auth. of the Cnty. of Chester v. Pa. State Civ. Serv. Comm'n*, 730 A.2d 935, 945 (Pa. 1999)). "Where ambiguity or inexplicitness exists, the Court may afford weight to other considerations, including the object to be attained by the statute under consideration, the consequences

---

[7] 1 Pa.C.S. §§ 1501-1991.

of a particular interpretation, and contextual considerations." *Gas v. 52nd Jud. Dist., Lebanon Cnty.*, 232 A.3d 706, 712 (Pa. 2020).

Here, Section 2 of Act 16 defines a "[s]urety" as "[a] person who pledges security, whether or not for compensation, in exchange for the release from custody of a person charged with a crime prior to adjudication." *Id.* However, Section 2 of Act 16 also defines an insurer "as defined in [S]ection 601-A of [The Insurance Department Act,]" 42 Pa.C.S. § 5741, which definition includes "an insurance company." 40 P.S. § 310.1.[8] Because Insurance Companies are both sureties and insurers, deciding the issue on the basis of the definition of bail bondsman versus surety ignores Act 16's mandate that no person shall engage in the business of a bail bondsman **unless the person has been licensed by the Insurance Department**. *See* 42 Pa.C.S. § 5742. Clearly, Insurance Companies, as insurers, are licensed by the Insurance Department.

Local Rule 531(e)(2) defines a "corporate surety" as "any corporation, limited liability corporation or partnership which engages in the business of providing bail, providing or soliciting bail undertakings, or providing or soliciting indemnity or court indemnity to others on bail undertakings." Del.Co.R.Crim.P. 531(e)(2). The fact that Insurance Companies may be corporate sureties under Local Rule 531(e) does not change the fact that they are insurers under Act 16.

Because under Section 2 of Act 16 all bail bondsmen in the Commonwealth are licensed insurance producers for certificated insurance companies, and the Insurance Department determines the insurance companies' qualifications to conduct business in the Commonwealth, there is no dispute that Act 16 prohibits a county from requiring bail bondsmen to post additional security.

In *Commonwealth v. Liberty Bail Bonds*, 8 A.3d 1031 (Pa. Cmwlth. 2010), this Court addressed whether a surety agent was required to have an office in a county

---

[8] Added by Section 2 of the Act of Dec. 6, 2002, P.L. 1183.

where the county's local rule and the Judicial Code so required. The *Liberty* Court concluded that the local office rule applied only to bail bondsmen and not to surety agencies. The *Liberty* Court explained:

> **The conditions that a surety company/agent must comply with prior to engaging in a surety business in Pennsylvania are set forth in** [**Section 661 of The Insurance Company Law**] . . . . A surety must be licensed by the [Insurance] Department, carry a statewide license, must pass certain testing, must be backed by an insurance company and must abide by the specific financing and solvency conditions set forth in [Section 661 of The Insurance Company Law]. **A professional bail bondsm[a]n is not subject to these conditions**. Moreover, a professional bail bondsm[a]n is solely in the business of posting bail for incarcerated individuals.

*Liberty*, 8 A.3d at 1033-34 (emphasis added).

The Majority maintains that because the *Liberty* Court "premised [its] holding on the statutory definition of "professional bondsman"[9] and the legislature's clear intent to distinguish between bondsmen and surety agencies with regard to their office requirements[,]" The Insurance Company Law's "provisions were not germane to the case." *Lexington Nat'l Ins. Co.*, slip op. at 12. However, that fact does not

---

[9] *Liberty* was decided before Act 16's enactment. At that time, Section 5741 of the Judicial Code defined a "[p]rofessional bondsman" as

> Any person, *other than a fidelity or surety company or any of its officers, agents, attorneys, or employees*, authorized to execute bail bonds or to solicit business on its behalf, who:
> (1) engages in the business of giving bail, giving or soliciting undertakings, or giving or soliciting indemnity or counter-indemnity to sureties on undertakings; or
> (2) within a period of 30 days has become a surety, or has indemnified a surety, for the release on bail of a person, with or without a fee or compensation, or promise thereof, in three or more matters not arising out of the same transaction.

*Liberty*, 8 A.3d at 1033 (emphasis omitted) (quoting former 42 Pa.C.S. § 5741).

discount the *Liberty* Court's recognition that **surety companies are regulated by the Insurance Department**, **not the county or the courts**.

Section 5702 of the Judicial Code expressly provides: "**Except as otherwise provided by** this title and **the laws relating to the regulation of surety companies**, all matters relating to the fixing, posting, forfeiting, exoneration and distribution of bail and recognizances shall be governed by general rules." 42 Pa.C.S. § 5702 (emphasis added). Thus, the General Assembly explicitly provided that the general rules (including Rule 531) *are superseded by the laws relating to the regulation of surety companies*. "The conditions that a surety company . . . must comply with prior to engaging in a surety business in Pennsylvania are set forth in [Section 661 of The Insurance Company Law.]" *Liberty*, 8 A.3d at 1033-34. Accordingly, the general rules, which are the rules of criminal procedure promulgated by the Pennsylvania Supreme Court,[10] do not control.

Moreover, The Insurance Company Law includes Section 1 of the Act of 1923,[11] which expressly instructs:

> Whenever any person individually, or in any public or private trust, who is now or hereafter may be required or permitted by law to make or execute or give a bond, or undertaking with security, conditioned for the faithful performance of any duty, or for the doing or not doing of anything in said bond or undertaking specified, **any head of a department**, **judge of the Supreme Court or prothonotary thereof**, **judge of the court of common pleas or prothonotary thereof**, **judge of the orphans' court**, **register of wills**, **sheriff**, **magistrate**, **or any other officer who is now or shall be hereafter required to approve the sufficiency of any such bond or undertaking**, **shall approve the same whenever the conditions of such bond or undertaking are guaranteed by a company duly authorized by the Insurance Department of this [s]tate to do business in this [s]tate**

---

[10] Section 102 of the Judicial Code defines "[g]eneral rule" as "[a] rule or order promulgated by the governing authority." 42 Pa.C.S. § 102.

[11] Act of June 29, 1923, P.L. 943, *as amended*, 40 P.S. §§ 831-838.

**and authorized to guarantee the fidelity of persons holding positions of public or private trust**, **and whenever such company has filed**, **in the office of the prothonotary of the county in which the said bond is to be approved**, **a certificate issued by the Insurance Commissioner of the [s]tate authorizing it to become surety on all bonds**, obligations, and undertakings, and **until such certificate has been revoked by the Insurance Commissioner**.

Such certificate shall be conclusive proof of the solvency and credit of such company for all purposes, and of its qualifications to be so accepted as such sole surety, and its sufficiency as such.

40 P.S. § 831 (emphasis added).

The Insurance Department's issuance of a license authorizes a surety company to issue bonds up to the maximum amount without further requirements, and for its bond to be universally accepted as sole surety. The insurer's general assets and the state-mandated deposit ensure the risk; there is no requirement of dedicated assets for a particular risk. Any other construction makes the statutory maximum bond amount meaningless. The Majority improperly attempts to distinguish bail bond surety companies, such as Insurance Companies, from any other licensed insurance company, and erroneously concludes that the local common pleas courts have authority to regulate certificated insurers and producers and establish county-by-county financial qualifications. The Majority's conclusions are plainly contrary to the General Assembly's unambiguous and comprehensive legislative scheme. Accordingly, because Section 5702 of the Judicial Code specifically excepts sureties' regulation from the courts' general rulemaking authority, I believe that Local Rule 531(e)(3)(d) does not control herein.

Because Insurance Companies are *insurers* under Act 16, and *corporate sureties* under The Insurance Company Law, I would conclude that the Insurance Department has the exclusive right to determine their qualifications to conduct business in the Commonwealth, and neither the courts nor the counties may override the

Insurance Department's regulations and authorizations. Accordingly, I would reverse the trial court's orders.

 

 

 

_____
ANNE E. COVEY, Judge